[No. 12318. Department Two. April 10, 1915.]

NORA S. JOHNSON, *Respondent*, v. ADOLPH O. JOHNSON, *Appellant*.[1]

APPEAL AND ERROR—PRESUMPTIONS—INSTRUCTIONS — CORRECTNESS. Where no question was raised as to the court's instructions, it will be assumed on appeal that, if the cause was one for the jury on the evidence, the instructions correctly stated the law and all of the law applicable.

NEGLIGENCE — CONTRIBUTORY NEGLIGENCE. When the defendant's negligence is the proximate cause of the injury for which action is brought, while that of plaintiff is only a mere condition and not an efficient cause of the injury, plaintiff's contributory negligence would not defeat recovery.

MUNICIPAL CORPORATIONS—USE OF STREETS—COLLISIONS—CONTRIBUTORY NEGLIGENCE—QUESTION FOR JURY. Whether an automobile colliding with a pedestrian on a street crossing without sounding a warning, was making noise sufficient to advise of its approach, and whether the average person accustomed to the usual street noises could have consciously heard and heeded the noise of the moving machine, are questions for the jury, where the evidence was conflicting on the point that considerable noise was made by the automobile as it approached the crossing where it ran over the pedestrian.

[1]Reported in 147 Pac. 649.

MUNICIPAL CORPORATIONS—INJURIES TO PEDESTRIAN—CONTRIBUTORY NEGLIGENCE—RIGHT OF WAY. A pedestrian, struck down by an automobile upon a street crossing where, by ordinance, she had the superior right of way, cannot be said, as a matter of law, to have been guilty of contributory negligence in not continuously observing the approach of the automobile, which she perceived a block away and thereafter paid no attention to it when she started to cross a well-lighted street, where her view was not obstructed by the presence of other vehicles, she having a right to assume that the driver would approach at a lawful rate of speed, that he would sound some signal of his approach, that he would observe the city ordinance and state statute as to speed at street crossings prohibiting a speed in excess of four miles an hour when any person was on the crossing, and that he would heed the pedestrian's superior right on the crossing by changing his course or actually stopping.

Appeal from a judgment of the superior court for King county, Albertson, J., entered June 18, 1914, upon the verdict of a jury rendered in favor of the plaintiff, in an action for personal injuries sustained by a pedestrian struck by an automobile.    Affirmed.

*Saunders & Nelson*, for appellant.

*Walter S. Fulton*, for respondent.

ELLIS, J.—This is an action for damages resulting from personal injuries to a pedestrian struck by an automobile at a street crossing in the city of Seattle.

It was stipulated in open court that the person driving the car was the minor son of the defendant and that for any negligence on the boy's part the father is liable.   The accident happened on September 24, 1913, at about 9:30 o'clock in the evening, at the intersection of Fourth avenue, which runs north and south, and Spring street, which runs east and west.   Fourth avenue was well lighted by cluster lights. The plaintiff had walked from Third avenue to Fourth avenue along the north side of Spring street.   She testified as follows:

"When I got to the corner I looked right and left as is my custom, and I saw the lights of an auto which apparently had just crossed the Madison street track.   I started across

and apparently was nearly across when I realized an explosion or something. There was just a bright glare of lights around me, and I knew nothing more.

"In crossing Fourth avenue I was on the north side of the street, right on the crossing. I noticed nothing unusual in the approach of the machine. I saw the lights and there was nothing unusual. I saw it as it had apparently crossed Madison and, had it been traveling at the usual rate of speed, I would have thought I could have gone over and back. I started with no apprehension of danger at all nor paid no attention to the approach of the machine. There was nothing unusual about it. I had no notice or warning of the approach of the machine. I saw those lights of the machine and the next I knew there was a flare of light. I was struck. . . .

"I did not hear any sound emitted from this machine as it approached me, as I was going across the street, nor any sound of any nature whatever. When I did notice this machine it had evidently just crossed the Madison street car line, a block away."

Another witness testified as follows:

"I saw an automobile cross Madison street going north on the east side of Fourth avenue. My attention was first attracted to it by the noise it was making coming up the street. I first noticed it just before it reached Madison street. The muffler was wide open and, as you know, it makes a loud report when it is going fast. There was a Madison street cable car going up. I was watching as I was expecting a person on that car. This machine passed by this car just in time to avert an accident. That was the first that attracted my attention, was the noise of the machine on the street, coming up the street. The machine was running not a bit less than thirty-five miles an hour and I daresay forty. I was standing at Spring and Fourth avenue. That is one block north of Madison street.

"I was on the west side of the street. I noticed Mrs. Johnson, did not know who she was at the time, but this lady crossing the street, going east on Fourth avenue at Spring street. The machine struck her and from where it struck her to where she landed, I should imagine it was a hundred feet or more. She was on the north side of Spring

street and I was on the south side.  There was no signal
whatever given, by horn or any signal.  After the machine
struck Mrs. Johnson it slowed down to, I should imagine,
fifteen or eighteen miles an hour and then the occupants
looked back, threw in their clutch and proceeded on their
journey."

He also testified that the collision took place right at the
crossing, and that when he first heard the automobile he
thought it was a fire wagon coming up the street.

Another witness, who at the time of the accident was sit-
ting at a window on the third floor of the Kerma hotel, lo-
cated on Fourth avenue some distance north of its intersec-
tion with Spring street, testified that he heard something
that sounded like a collision, "as if a machine or something
had run into a wagon or street car;" that he looked out of
the window and saw the plaintiff lying in the street directly
in front of the window and an automobile going down the
street to the north; that in his judgment the automobile was
going about thirty miles an hour; that he did not hear any
noise of the machine at all except that made by the collision.

The boy, a youth of sixteen, who was driving the automo-
bile, and two other witnesses testified that the machine was
running at from ten to twenty miles an hour; that it was
making considerable noise, and that the accident happened
in front of the Kerma hotel some distance north of Spring
street.  None of these, nor any other witness, testified that
any horn was sounded or other alarm given.

In response to special interrogatories, the jury found:
(1) that the plaintiff was walking east when the accident
occurred as she was crossing Fourth avenue; (2) that she
was struck at the intersection of Fourth avenue with Spring
street; (3) that she was not struck at the place where she
was found in the street after the accident.  The jury also re-
turned a general verdict in favor of the plaintiff and against
the defendant in the sum of $3,500.  At appropriate times,
the defendant moved the court for a nonsuit, for a verdict in

his favor upon all the evidence, and for a new trial. These motions were overruled. Judgment was entered upon the verdict. The defendant appeals.

No question is raised touching the court's instructions. We must assume that, if the cause was one for the jury on the evidence, the instructions correctly stated the law and all of the law applicable.

It is conceded by the appellant that all his assignments of error raise the single contention that the respondent was guilty of contributory negligence sufficient, as a matter of law, to bar her from recovery. It is further conceded that in passing upon this question we must consider not only the literal statements of witnesses, but every justifiable inference favorable to the respondent which may be drawn therefrom. *Brown v. Walla Walla*, 76 Wash. 670, 136 Pac. 1166; *Hillebrant v. Manz*, 71 Wash. 250, 128 Pac. 892; *King v. Page Lumber Co.*, 66 Wash. 123, 119 Pac. 180; *Young v. Aloha Lumber Co.*, 63 Wash. 600, 116 Pac. 4. The appellant asserts that, applying this rule, the following facts must be taken as true:

"(1) That the automobile coming from the south and proceeding north along the east or right hand side of Fourth avenue, approached and ran over the crossing at a high and unlawful rate of speed; (2) that no horn was blown as the automobile approached the crossing; (3) that the driver of the automobile was, in fact, negligent at the time and the place of collision, and that his negligence was the proximate cause of the injury; (4) that the plaintiff, while crossing from the west to the east side of Fourth avenue at the intersection of Spring street with the avenue, was struck, where as a pedestrian she had right of way over the automobile; (5) that the collision occurred in the night time; (6) that at the time of the collision the automobile was running with brilliant headlights burning, throwing rays approximately 150 feet ahead of it; (7) that at the time of the collision and for more than one block before it occurred, the automobile was making a great deal of noise by reason of the fact that the muffler was open, so much noise that it resembled a fire engine; (8) that there were no vehicles or other obstructions

in the street whatever to intercept the view of the automobile by the plaintiff; (9) that when the plaintiff reached the northwest corner of Spring street and Fourth avenue, she looked both ways and observed the lights of the auto about a block to the south on Fourth avenue; (10) that she started across and was nearly across Fourth avenue when she found herself in a glare of lights around her and was struck; (11) that she had noticed nothing unusual in the approach of the automobile; (12) that she estimated when she saw it that had it been traveling at the usual rate of speed, she would have had time to go across the street and back; (13) that she then started with no apprehension of danger and paid no attention to the approach of the machine; (14) that she is a person of normal faculties with no impairment of sight or hearing; (15) that she was neither confused nor distracted by any other circumstances, and that nothing whatever came between her and the approaching automobile or distracted her attention, or in any way prevented her from glancing in the direction of its approach and governing her progress by its actual, rather than by its presumed movements."

We shall pass the third concession which, if taken literally, would dispose of the case; since if it be conceded that the appellant's negligence was the proximate cause of the injury, then any negligence on respondent's part would be merely a condition and not a contributing or efficient cause of the injury. This was a question for the jury.

"When the defendant's negligence is the proximate cause of the injury, while that of the plaintiff is only a remote cause or a mere condition of it, the action will lie." *Redford v. Spokane St. R. Co.*, 15 Wash. 419, 423, 46 Pac. 650; *Benson v. English Lumber Co.*, 71 Wash. 616, 623, 129 Pac. 403; *Atherton v. Tacoma R. & Power Co.*, 30 Wash. 395, 405, 71 Pac. 39; Beach, Contributory Negligence (2d ed.), § 54.

We take it that this concession, taken literally, is broader than intended.

Counsel's effort to be absolutely fair in the foregoing statement of the evidence and legitimate inferences is self-evident, but a careful reading of the evidence makes it

equally obvious that he has overlooked certain inferences fairly deducible therefrom necessitating a vital modification of the 7th, 8th and 15th postulates. Touching the 8th and 15th, while it is true that there was no vehicle or other obstruction to intercept the respondent's view of the automobile, the inference is equally clear, from the same facts, that there was nothing to obstruct the driver's view of the respondent. While it is also true that there was nothing to prevent the respondent's glancing in the direction of the automobile and governing her progress by its actual rather than its presumed movements, it is also true that there was nothing to prevent the driver from glancing in the direction of the crossing and seeing that the respondent was taking a straight course thereon unconscious of the dangerously rapid approach of the automobile, and governing his movements accordingly. The 7th postulate overlooks the inference reasonably to be drawn from the testimony of at least two witnesses. While it is true that one witness testified positively that the automobile was making as much noise as a fire engine, and three others that it was making considerable noise, the respondent testified that she did not hear any noise, and one other witness, who heard the impact when the automobile struck the respondent, testified that he heard no other noise. It cannot be said that, as a matter of law, the machine was in fact making a loud noise as it approached the respondent. The evidence furnishes an inference to the contrary. The question, even if controllingly material, was for the jury.

Even assuming as an established fact that this machine was making considerable noise, the jury might reasonably have inferred, and we believe the inference justifiable, that the average person, not temperamentally timorous nor abnormally cautious, would pay little attention to sounds ordinarily prevailing in a city street other than those habitually recognized and relied upon as intended for warnings. We are not prepared to say that, as a matter of law, the average person

either would have or should have consciously heard and heeded the noise made by this automobile when no bell or other warning signal was given. The question was one for the jury.

The inquiry is thus narrowed to this: was the respondent, as a matter of law, guilty of contributory negligence in not continuously observing the automobile, which she saw a block distant when she entered upon the crossing, in order to avoid being run down by it? By an ordinance introduced by appellant, the pedestrian is given the right of way over street crossings. By another ordinance, introduced by respondent, automobiles are prohibited from traveling over street crossings in business districts at a rate of speed greater than eight miles an hour. The state law prohibits a greater rate of speed than four miles an hour by automobiles crossing street intersections when any person is thereon. Rem. & Bal. Code, § 5571 (P. C. 33 § 19).

If the burden is placed upon the pedestrian, who when starting across a well-lighted street at a crossing sees an automobile a full city block distant, to thereafter continuously look up and down the street to avoid being run over on pain of being charged, *as a matter of law*, with contributory negligence, then the concession that, *as a matter of law*, the pedestrian has the right of way at such crossings is an empty fiction. No greater care than this constant observation could be required at any other place on the street. The term "right of way" must have some bearing upon the relative rights, hence on the relative care required of the parties. If a pedestrian must exercise the same care of continuous observation at the crossings as in the middle of the block, in order to avoid the charge of contributory negligence when run down by a speeding automobile without sounding a warning, then he has no right of way, but enters upon any part of the street at his own peril. If the conceded right of way means anything at all, it puts the necessity of continuous ob-

servation and avoidance of injury upon the driver of the automobile when approaching a crossing, just as the necessity of the case puts the same higher degree of care upon the pedestrian at other places than at crossings.

The appellant seeks to invoke as a saving virtue the fact that the automobile was running on the right-hand side of the street as prescribed by the law of the road. It is insisted that the respondent "had as much right to presume that the automobile would continue in this course as that it would approach at a lawful rate of speed." This is not the law. It is wholly inconsistent with the positive provisions of the ordinance giving to the pedestrian the superior right upon the street crossing. The respondent not only had the right to assume that the automobile would approach at a lawful rate of speed, but that its driver would sound a horn or give some other signal of its approach and that he would heed her superior right at the crossing and avoid running her down, though it might necessitate a change of course or an actual stopping. As said in *Lewis v. Seattle Taxicab Co.*, 72 Wash. 320, 130 Pac. 341:

"The respondent did not step from the street immediately in front of the automobile, nor did he in crossing the street any time obstruct its path. He was as much in view of the driver of the automobile as the automobile was in his view, and as there was room to pass him on either side, we think it too much to say, as a matter of law, that he was required to take notice of the particular part of the street the automobile driver desired to use, and keep off that particular part."

As said in *Franey v. Seattle Taxicab Co.*, 80 Wash. 396, 141 Pac. 890:

"It is argued that the plaintiff was guilty of contributory negligence in not looking for the automobile. But the evidence shows he was upon the crossing, where he had a right to be. If he had looked and seen the automobile coming, he

had a right to assume that the driver would not violate the city ordinance in regard to speed, and at that point would be obliged to pass him without running him down."

And again as said in *Chase v. Seattle Taxicab & Transfer Co.*, 78 Wash. 537, 139 Pac. 499:

"The respondent saw the taxicab a block to the south, and proceeded in a uniform course without hesitation or vacillation. Whether his failure to look a second time was such negligence as to prevent a recovery was for the jury."

See, also, *Ludwigs v. Dumas*, 72 Wash. 68, 129 Pac. 903; *Hillebrant v. Manz*, 71 Wash. 250, 128 Pac. 892; *Birch v. Abercrombie*, 74 Wash. 486, 133 Pac. 1020, 135 Pac. 821; *Tschirley v. Lambert*, 70 Wash. 72, 126 Pac. 80.

All of these are automobile cases in which we have consistently adhered to the rule that a pedestrian, though seeing an automobile at a considerable distance, may proceed to cross the street at the crossing in a uniform course without hesitation or vacillation, without being charged with contributory negligence as a matter of law.

The case of *Minor v. Stevens*, 65 Wash. 423, 118 Pac. 313, 42 L. R. A. (N. S.) 1178, is not averse to the views here expressed. In that case the judgment was reversed because it affirmatively appeared that the jury had failed to determine the question of contributory negligence on the facts there presented and submitted by the court's instructions. That decision, however, does recognize as unquestioned law that a higher degree of care, by reason of the dangerous character of the vehicle, rests upon the driver of an automobile at street crossings than upon the pedestrian.

The case of *Borg v. Spokane Toilet Supply Co.*, 50 Wash. 204, 96 Pac. 1037, 19 L. R. A. (N. S.) 160, is inapplicable to the facts here for two reasons. In the first place, the pedestrian was there crossing the street diagonally in the middle of the block, hence had no superior right; in the second place, the offending instrument was a horse-drawn

vehicle, not of the same dangerous character as an automobile.

In the case of *Dimuria v. Seattle Transfer Co.*, 50 Wash. 633, 97 Pac. 657, 22 L. R. A. (N. S.) 471, which goes as far as any decision of this court in holding lack of observation contributory negligence as a matter of law, we again find involved an ordinary wagon and team. The pedestrian, neither before nor while crossing the street, looked in either direction, but proceeded with an umbrella in such a position as to prevent any observation of his surroundings on his part.

We shall not dwell upon the street car cases cited and mainly relied upon by the appellant, further than to restate what we said in *Lewis v. Seattle Taxicab Co.*, *supra:*

"The degree of care required of a pedestrian crossing a railroad or street car track is much higher than is the care required of one crossing an ordinary public street where only passing teams or automobiles are to be encountered. Railroad trains and street cars must move on a fixed track, and the track is, for that reason, at once a warning of danger and a marking of the zone of safety; the cars are heavy and cumbersome and cannot turn aside to avoid a collision or be brought quickly to a stop when once in motion; hence the persons directing the movements of such cars are limited in their powers to protect persons found upon the track. But this is not true with reference to ordinary vehicles. The driver of these has freedom of choice as to the part of the street he will drive them upon; they can be turned quickly to one side or the other, and are capable of easy control otherwise. As to these, therefore, the footman may rely on the presumption that, so long as he occupies one place or pursues a given course, he need not be run into, and to fail to keep a lookout for the approach of such vehicles is not necessarily want of care."

See, also, *Skaala v. Twin Falls Logging Co.*, 82 Wash. 679, 144 Pac. 897.

Appellant's negligence being conceded, it seems to us that, in any view of the evidence, the questions of respondent's

negligence, and whether, if she was negligent, that negligence was the proximate or efficient cause of the injury, were for the jury.

The judgment is affirmed.

MORRIS, C. J., CROW, MAIN, and FULLERTON, JJ., concur.