[No. 13243. Department Two. March 2, 1917.]

JAMES B. ADAIR, *Appellant*, v. ELIZABETH A. McNEIL *et al.*,
*Respondents.*[1]

MUNICIPAL CORPORATIONS — STREETS — ACCIDENTS AT CROSSINGS—
AUTOMOBILES—NEGLIGENCE—CONTRIBUTORY NEGLIGENCE—QUESTION FOR
JURY. The negligence of the driver of an automobile and the con-
tributory negligence of the plaintiff, a pedestrian, struck at a street
intersection in the nighttime, cannot be decided as a matter of law,
merely because the automobile was not exceeding the extreme speed
limit of eight miles per hour at street intersections and plaintiff did
not look for the approach of an automobile while crossing the street;
but the same are questions for the jury, where it appears that the
plaintiff was not aware of the approach of the automobile until it
struck him, that there was no other traffic on the street at the time,
that the headlights were burning brightly and lighting up the street,
and there was evidence tending to show that the driver might have
seen the plaintiff in time to have avoided the accident if he had
looked and if the car had been within the speed limit. '

Appeal from a judgment of the superior court for King
county, Frater, J., entered September 13, 1915, upon grant-
ing a nonsuit, dismissing an action for personal injuries sus-
tained by a pedestrian struck by an automobile. Reversed.

*Hughes, McMicken, Dovell & Ramsey* and *John P. Garvin,*
for appellant.

*John W. Roberts, George L. Spirk,* and *Totten & Totten,*
for respondents.

PARKER, J.—The plaintiff, James B. Adair, seeks recov-
ery of damages for personal injuries which he claims re-
sulted to him from the negligence of the defendant, Archie
McNeil while driving an automobile, as the agent of the de-
fendant Elizabeth A. McNeil, upon a public street of Se-
attle. In response to a motion made by counsel for the de-
fendants at the close of the evidence upon the trial, the su-
perior court rendered a judgment of dismissal in their favor.

[1]Reported in 163 Pac. 393.

The motion was made and judgment rendered upon the theory that the evidence would not support a verdict and judgment in favor of the plaintiff, the court deciding, as questions of law, that the defendants were not guilty of negligence and that the plaintiff's injuries were the result of his own negligence. From this disposition of the case, the plaintiff has appealed to this court.

Respondent Elizabeth A. McNeil was the owner of the automobile in question at the time appellant was injured. Archie McNeil is her son, and was then driving the automobile for the family. The accident occurred near the southeast corner of Melrose avenue and Olive street, which intersect each other at an angle of about sixty degrees, Melrose avenue running north and south, and Olive street running northeasterly and southwesterly. Both streets are paved. Shortly after dark, during the evening of the day of the accident, appellant was walking across Melrose avenue in a northeasterly direction, along or very near the line of the sidewalk on the southerly side of Olive street, going from the business district of the city to his home. There was then no street light at this street intersection, so there was only such light as may have been furnished by street lights at other street intersections a half or whole block distant. Appellant had left the sidewalk at the southwest corner at the street intersection and walked across the paved driveway to a point about ten feet from the sidewalk at the southeast corner of the street intersection, when he was struck by the left front lamp of the automobile driven by Archie McNeil, knocked down and rendered unconscious. He seems to have no memory of what immediately preceded his being knocked down, other than that he was walking across the paved driveway of the street in the usual manner of a pedestrian. He may not have been proceeding along a direct line of the southerly sidewalk of Olive street, but, if not, he was a little to the north thereof towards the middle of Olive street,

and possibly may have been contemplating crossing Olive street in a diagonal course towards the northerly side thereof. It is plain, however, that he was struck while within the side lines of both Melrose avenue and Olive street; that is, while in the intersection of those streets. He testified that he did not see any approaching automobile or the lights thereof or hear the sound of any horn or other warning, and was not conscious of the presence of the automobile until almost the instant he was struck. The automobile was driven by Archie McNeil north along Melrose avenue towards Olive street with the view of turning to the right upon Olive street. It is claimed in behalf of respondents that the automobile had not exceeded a speed of eight miles an hour while proceeding along Melrose avenue within the block immediately to the south of Olive street, and that it was going less than eight miles an hour when it came to the southerly boundary of Olive street. This we may concede for the purpose of argument. It is also claimed in respondents' behalf that the four front lights of the automobile were on and shining brightly, throwing a light at least a half block forward. It also seems highly probable that this light was sufficiently diffused to light up practically all of the width of the driveway, except possibly for a short distance in front of the automobile. Just how far appellant was from the automobile when Archie McNeil, its driver, first saw him, or in the exercise of due care should have seen him, is a question upon which there is ample room for difference of opinion. It seems plain, however, that, from the point where appellant left the sidewalk and came upon the paved driveway portion of the street at the southwest corner of the intersection to the point where the automobile struck him, was a distance of probably thirty feet or more. No other person or vehicle was at the time upon the driveway portion of the street intersection. At the time in question, there was in force in the city of Seattle an ordinance relating to the operation

and speed of automobiles upon its public streets, reading
in part as follows:

"It shall be unlawful for any person to ride, drive or pro-
pel any automobile, . . . along, over or across any street,
alley,. avenue, boulevard, park, drive or other public place
in the city, at an excessive or unreasonable rate of speed,
or at such a rate of speed as will endanger the lives, limbs
or property of pedestrians or others using such streets. or
other public places, and in no event at a rate of speed
greater than twenty miles an hour, . . . or to pass or
cross any street intersection or round any corner at a greater
rate of speed than eight miles an hour, . . ." Ordinance
No. 33,413.

We are constrained to hold, in view of these facts, that
the trial court erred in taking the case from the jury and
deciding the questions of respondents' negligence and ap-
pellant's contributory negligence as matters of law. The
argument of counsel for respondents seems to be, in sub-
stance, that they were not guilty of negligence if the auto-
mobile was proceeding at a rate of speed less than eight
miles an hour when it reached the southerly line of the. street
intersection, and that appellant was guilty of contributory
negligence because he did not look for the approach of an
automobile or other vehicle along Melrose avenue upon leav-
ing the sidewalk at the southwest corner of the street inter-
section and proceeding across the paved roadway. We think
these contentions are untenable, in view of the law which re-
quires drivers of. automobiles to look out for pedestrians
upon street crossings as much as it requires pedestrians upon
street crossings to look out for automobiles. This is a dif-
ferent question from that of the degree of care required of
a pedestrian to look out for and avoid street cars and rail-
way trains, which run upon fixed tracks and are less easily
controlled because of their weight than automobiles. It is
evident that the width of the driveway was such as to fur-
nish ample room for the automobile to pass appellant with-
out injuring him, and the jury might well have believed that

the lights from the automobile were such as to enable Archie McNeil, its driver, to see appellant in time to avoid striking him, especially if the machine was going as slow as he claimed it was and if the head lights of the machine were as effective as he claimed they were. This is not a case of appellant's walking suddenly in front of an approaching machine which he knows is approaching. The jury could well have believed that appellant could have been seen by Archie McNeil from the time he left the sidewalk until he arrived at the place of the accident, and that his rate of progress furnished opportunity to avoid striking him. We therefore think that appellant's want of care to look and see the machine approaching was not such that it called for the court's holding him guilty of contributory negligence as a matter of law, in view of the duty devolving upon the driver of the automobile; nor do we think that, under the facts disclosed, could the court determine, as a matter of law, that Archie McNeil was free from negligence causing appellant's injury. The remarks of Judge Fullerton, speaking for the court, in *Lewis v. Seattle Taxicab Co.*, 72 Wash. 320, 323, 130 Pac. 341, seem quite appropriate here, as follows:

"On the question of the degree of care required of persons while crossing public streets used by passing vehicles, the appellant cites from this and other courts a number of cases of injury caused by railroad trains and passing street cars; but it is at once apparent that these cases can hardly be said to be in point except as they may state general principles. The degree of care required of a pedestrian crossing a railroad or street car track is much higher than is the care required of one crossing an ordinary public street where only passing teams or automobiles are to be encountered. Railroad trains and street cars must move on a fixed track, and the track is, for that reason, at once a warning of danger and a marking of the zone of safety; the cars are heavy and cumbersome and cannot turn aside to avoid a collision or be brought quickly to a stop when once in motion; hence the persons directing the movements of such cars are limited in their powers to protect persons found

upon the track. But this is not true with reference to ordinary vehicles. The driver of these has freedom of choice as to the part of the street he will drive them upon; they can be turned quickly to one side or the other, and are capable of easy control otherwise. As to these, therefore, the footman may rely on the presumption that, so long as he occupies one place or pursues a given course, he need not be run into, and to fail to keep a lookout for the approach of such vehicles is not necessarily want of care. The degree of care required of such a person of course varies with the circumstances."

See, also, *Hillebrant v. Manz*, 71 Wash. 250, 128 Pac. 892; *Chase v. Seattle Taxicab & Transfer Co.*, 78 Wash. 537, 139 Pac. 499; *Franey v. Seattle Taxicab Co.*, 80 Wash. 396, 141 Pac. 890; *Johnson v. Johnson*, 85 Wash. 18, 147 Pac. 649; *Stephenson v. Parton*, 89 Wash. 653, 155 Pac. 147, and *Morrison v. Conley Taxicab Co.*, 94 Wash. 436, 162 Pac. 365, lend support to our conclusion.

Counsel for respondents seem to argue that, because the automobile was moving at a speed of less than eight miles per hour when it reached the southerly line of the street intersection, its driver was, therefore, free from negligence. Assuming, for argument, that the evidence conclusively shows that the speed of the automobile had been reduced to less than eight miles per hour at this point, still we are unable to see how that would, as a matter of law, free Archie McNeil, its driver, from negligence. This would seem to be true aside from the provisions of the ordinance. But while the provisions of the ordinance limit the speed upon street intersections to eight miles per hour, that is only the extreme speed permitted under any circumstances by the terms of the ordinance. It is also provided therein that it shall be unlawful to drive an automobile at such places "at an excessive or unreasonable rate of speed or at such rate of speed as will injure the lives, limbs or property of pedestrians or others using such streets or public places." It seems quite plain to us that, under all the circumstances here shown, it

cannot be held, as a matter of law, either that respondents were free from negligence or that appellant was guilty of contributory negligence resulting in his injuries, whatever we might think as to the duty of the jury to find one way or the other upon these questions. Clearly there is room for honest difference of opinion upon these questions of fact. This is enough to carry the case to the jury.

We conclude the judgment must be reversed and appellant awarded a new trial. It is so ordered.

MOUNT, HOLCOMB, and FULLERTON, JJ., concur.