[No. 15860. Department Two. July 22, 1920.]

## MARIA OLSEN et al., Respondents, v. PEERLESS LAUNDRY, Appellant.[1]

APPEAL AND ERROR (386)—REVIEW—PARTIES ENTITLED TO ALLEGE ERROR—ACQUIESCENCE OR WAIVER. If defendant puts in evidence after refusal of a nonsuit, the plaintiff is entitled to receive any and all benefits therefrom.

MUNICIPAL CORPORATIONS (379, 389)—USE OF STREETS—COLLISION AT CROSSINGS—NEGLIGENCE—EVIDENCE—SUFFICIENCY. Negligence of the driver of an auto truck in colliding with a pedestrian at a street intersection is shown by his testimony that he saw the plaintiff, evidently unaware of his approach and crossing the street in line of a collision, that he was driving slowly in low gear and could have stopped within three or four feet, and that he did not alter his course, slacken his speed, or give warning of his approach; it being the duty of a driver to sound his horn in all cases where it would probably avoid an accident.

SAME (379, 380)—NEGLIGENCE—VIOLATION OF ORDINANCE—RIGHT OF WAY AT CROSSINGS. Under an ordinance giving to pedestrians the right of way at street intersections, pedestrians are not required to stop and yield the right of way as a matter of right to drivers of trucks and automobiles.

SAME (383, 391)—CONTRIBUTORY NEGLIGENCE—QUESTION FOR JURY. Whether a pedestrian struck by an auto truck at a street crossing

[1]Reported in 191 Pac. 756.

was guilty of contributory negligence in failing to look a second time, is a question for the jury, where both she and her companion testified that they looked before proceeding across the street and saw no approaching vehicle and the way was apparently clear; since the duty to do so would depend on the surrounding conditions and whether she had the right of way.

WITNESSES (74)—CROSS-EXAMINATION—SCOPE AND EXTENT. In an action for personal injuries sustained by a pedestrian at a street intersection through collision with an auto truck, an objection to a question asked plaintiff's companion on cross-examination as to the subject of their conversation, is properly sustained, though it might have been proper cross-examination had the purpose been to find out whether they were talking at the time.

DAMAGES (84)—PERSONAL INJURIES—EXCESSIVE VERDICT. A verdict for $5,458, for injuries sustained by a pedestrian struck by a motor truck, is not excessive, where there was a fracture of the neck of the left femur, the plaintiff was in bed for over six weeks and suffered much during that time, she could get about only on crutches at the time of the trial, and the medical testimony showed that it was questionable whether there would be a bony union of the parts, that the limb was one-half inch shorter than before the accident, and that the injury would probably be permanent.

Appeal from a judgment of the superior court for King county, Ronald, J., entered February 7, 1920, upon the verdict of a jury rendered in favor of the plaintiff, in an action for personal injuries sustained by a pedestrian struck by a motor truck. Affirmed.

*William Wray,* for appellant.

*McClure & McClure* (*Walter S. Osborn,* of counsel), for respondents.

BRIDGES, J.—This was a personal injury suit. The plaintiff Maria Olsen and her companion, Mrs. Peters, on the 20th day of February, 1919, were walking easterly on the north sidewalk of Pine street, in the city of Seattle, Washington, intending to cross Third avenue. When they reached the intersection of these streets, and before stepping into Third avenue, they each looked north and south on Third avenue to see

whether there were any approaching vehicles, and observing that the way was clear, and seeing nothing approaching, they started across Third avenue in the line of the north sidewalk of Pine street. When they had proceeded about two-thirds of the way across the street, the defendant's auto truck or delivery wagon suddenly loomed up in front of them, just missing, but brushing the clothing of Mrs. Peters, who was on the right of Mrs. Olsen, that being the direction from which the truck came, and striking Mrs. Olsen, probably with the rear fender, knocked her down, causing her serious injury.

At the time in question, there was considerable traffic on Pine street, but apparently none on Third avenue within the immediate vicinity of this crossing. Neither the plaintiff nor her companion saw the approach of the truck. The driver of the truck testified that he approached Pine street from the south on Third avenue, and found travel on Pine street such that he was required to and did stop near the curb at the southerly intersection of these streets. As soon as the traffic on Pine street had cleared, he started across in low gear, going at the rate of six or eight miles per hour until his truck struck the plaintiff. When he was on the street car tracks on Pine street, which would be about the center of that street, he observed the plaintiff and her companion crossing Third avenue at the sidewalk crossing. When within five or six feet of them, he again observed the pedestrians, and should have realized, and probably did realize, that, unless he or they stopped or changed course, there would be a collision. He did not, however, change his course, slacken his speed, blow his horn, or give any other signal of his approach, but went ahead, assuming that the plaintiff and her companion would stop and allow him to pass

in front of them. At the close of plaintiff's testimony, the defendant moved for a nonsuit, which the court denied. At the close of the taking of all the testimony in the case, the defendant asked for an instructed verdict in its favor, which was also denied. The court likewise denied its motion for a new trial. There was a verdict for the plaintiff in the sum of $5,458. From the judgment entered on this verdict, this appeal is taken.

The appellant contends that the testimony fails to show any negligence on the part of the driver of the auto truck, but does show contributory negligence, as a matter of law, on the part of the plaintiff Mrs. Olsen. In considering these questions, we must take into consideration all the testimony in the case. The appellant having proceeded to put in its testimony after the court's refusal of its motion for nonsuit, the respondent is entitled to receive any and all benefits therefrom. *Port Townsend v. Lewis,* 34 Wash. 413, 75 Pac. 982; *Elmendorf v. Golden,* 37 Wash. 664, 80 Pac. 264; *Dimuria v. Seattle Transfer Co.,* 50 Wash. 633, 97 Pac. 657, 22 L. R. A. (N. S.) 471.

The testimony of the driver of the truck or delivery wagon was sufficient in itself to take the case to the jury on the question of negligence. He says he was driving his car across Pine street at a speed of about six or seven miles per hour, and could have stopped it within three or four feet; that, when he reached the center of Pine street, he saw the plaintiff and her companion walking across Third avenue, and that, at that time, they were about halfway across that street. When within five or six feet of these pedestrians, the driver again saw them, and must have realized that it would be necessary that he or they must do something to avoid a collision. He frankly admits that, under these

circumstances, he did not alter his course, nor stop, nor slacken his machine, nor blow his horn, nor give other warning of his approach, but went straight ahead because he thought or supposed that the plaintiff and her companion saw him or would see him, and that they would stop and allow him to pass in front of them. Plainly, in so driving, he was guilty of negligence. He had no right to conclusively presume that the plaintiff or her companion saw him or would see him, and that they would get out of his way. The conduct of these ladies, and all the surrounding circumstances, show, and should have indicated to the driver, that they were not aware of his approach. Under these circumstances, ordinary precaution and care would have required him to blow his horn, slow down, stop, or swerve to the right or left. Any one of these acts would probably have avoided the injury.

Again, there was introduced in evidence an ordinance of the city of Seattle which expressly gave to pedestrians the right of way at street intersections. It may be difficult to lay down any fixed rule showing just what rights and privileges this right of way may give to pedestrians or take from the drivers of automobiles. It certainly does not mean that the driver of a truck or automobile would have the right to use the intersection without any regard for the rights of the pedestrians, or in such manner as would require the latter, as a matter of right, to stop and yield the right of way. As was said in the case of *Johnson v. Johnson,* 85 Wash. 18, 147 Pac. 649:

"If the conceded right of way means anything at all it puts the necessity of continuous observation on the driver of the automobile when approaching a crossing, just as the necessity of the case puts the same higher degree of care upon the pedestrian at other places than at crossings."

In this case it seems to us that each act of the driver of the auto delivery was on the assumption that he had the right of way and that the pedestrians must stop and yield to him. Aside, however, from the question of right of way, we are greatly impressed with the idea that, had the driver used his horn, this accident would not have happened. Drivers of automobiles and auto trucks should know that the law will insist that they must sound their horns on all occasions where it can be said that, had such been done, an accident might or probably would have been avoided. We have no question, therefore, that there was amply sufficient testimony to take the case to the jury on the question of the negligence of the driver of the auto truck.

But it is strongly insisted that the testimony shows that the plaintiff was guilty of contributory negligence, as a matter of law. With this contention we cannot agree. What we have already said concerning the right of way is applicable to this branch of the case; but, aside from that question, there was sufficient testimony to take the case to the jury. Both Mrs. Olsen and her companion testified that, when they reached Third avenue and before stepping down onto that street, they looked north and south on Third avenue and did not see any vehicle approaching and found the way to be apparently clear. All of the circumstances would indicate that, at the time they so looked, the appellant's delivery wagon was standing near the curb on the south side of Pine street awaiting an opportunity to cross that street. It is true the testimony for the plaintiffs is not very clear whether, after stepping onto Third avenue, Mrs. Olsen thereafter looked for approaching vehicles; but we cannot say, as a matter of law, that such was her duty. We have, time and again, said that one must, before undertaking to cross a

street, look for approaching vehicles, but whether, after so doing and while making the crossing, he must again look or continue to look, depends on many circumstances and conditions; such as the amount of traffic; the probability of there being approaching vehicles; whether the statutes or ordinances give him the right of way; whether other objects or things have attracted his attention. Manifestly this is a question for the jury. This identical question has been before this court in a number of cases. In the case of *Redick v. Peterson*, 99 Wash. 368, 169 Pac. 804, Judge Holcomb, speaking for the court, said:

"The question then is, whether it is contributory negligence for a pedestrian, after having looked once in a direction along the street for vehicles that might interfere with safe passage across the street, at a regular street crossing, and in other necessary directions along the street, to fail to look a second time in the first direction. We think not, as a matter of law."

See, also, *Johnson v. Johnson, supra; Adair v. McNeil*, 95 Wash. 160, 163 Pac. 393. In the case of *Chase v. Seattle Taxicab & T. Co.*, 78 Wash. 537, 139 Pac. 499, this court said: -

"Upon the second proposition, it is equally obvious that the question of the contributory negligence of the respondent was for the jury. The respondent saw the taxicab a block to the south, and proceeded in a uniform course without hesitation or vaccilation. Whether his failure to look a second time was such negligence as to prevent a recovery was for the jury."

The cases from which we quote cite many of the authorities on this question.

The appellant, in cross-examining Mrs. Peters, who was crossing the street with Mrs. Olsen, asked the following question: "What was the talk going on between you and Mrs. Olsen from the time you left the

Standard Furniture Company until the time you got
to Third and Pine and started to cross?'' Objection
to this question was sustained. Appellant predicates
error thereon. It contends that it had a right to show
what these ladies were talking about, for the purpose
of indicating whether they were paying attention to
approaching vehicles. If the purpose of the question
had been to find out whether these ladies were talking,
it might have been proper cross-examination, but the
subject of their conversation could not possibly lend
any light to the jury. Appellant also complains of
certain other rulings of the court with reference to
the introduction of testimony. We have carefully con-
sidered them and do not find any error in them.

It is next contended that the verdict is excessive.
The testimony shows that, as a result of this injury,
there was a fracture of the neck of the left femur about
three-quarters of an inch below the head of the femur.
The plaintiff was required to stay in bed for more than
six weeks, during all of which time she suffered much.
At the time of the trial, she could get about only on
crutches. The medical testimony was to the effect that
there had not been a bony union, and it was very ques-
tionable whether there ever would be such; that the
injured limb was, at the time of the trial, about one-
half inch shorter than it was before the injury, and
that the injury was, in all probability, permanent. Un-
der these circumstances, we cannot say the verdict is
excessive.

Finding no error, the judgment is affirmed.

HOLCOMB, C. J., FULLERTON, MOUNT, and TOLMAN,
JJ., concur.