[No. 27284.  Department One.  March 25, 1939.]

VINCENT SHEPHARD, *Respondent,* v. JOHN SMITH, *Appellant.*[1]

---

[1]Reported in 88 P. (2d) 601.

*Eggerman & Rosling, W. S. Greathouse,* and *Jasper L. Rucker,* for appellant.

*Vanderveer & Bassett,* for respondent.

ROBINSON, J.—This appeal grows out of a collision between a pedestrian and an automobile, which occurred in the city of Everett at or near the intersection of Pacific avenue and Norton street at about 1:30 a. m., July 4, 1937.

Being confronted with seventeen assignments of legal error, we shall not attempt to state the facts in detail. It is not a case of a pedestrian suddenly running out into the street. Shephard, the pedestrian, was crossing the street at or near the crosswalk, and was three-quarters of the way across when the collision happened. The streets were dry. There was no other traffic to confuse the parties. There was a street light in the middle of the intersection, and visibility was good. Smith, the driver, admitted that he did not see Shephard until he struck him, and, under the circumstances, that admission was quite sufficient to take the case to the jury with respect to his negligence.

It is vigorously contended, however, that the trial court should have taken the case from the jury, on the ground that Shephard was guilty of contributory negligence as a matter of law. We find that the following excerpt from the appellant's abstract is a fair statement of Shephard's testimony, as found in the statement of facts:

"I looked as I stepped off the curb and I didn't see a car coming in either direction. I first observed a car coming when it was right onto me and it was kind of weaving that way. When I first observed there

was an automobile coming I was three-quarters of the way across the street. I couldn't exactly tell the distance he was away from me at that time. He was almost a half block. I have no idea of speed of cars but he was traveling pretty fast. I don't know what happened after he hit me. I seen him coming kind of wobbling this way and when he hit me that's all I know. He began to going this way and I thought he was only fooling with me or scaring me until he hit me and then that's all I knew."

The appellant contends that the physical facts show that this testimony cannot be true. We have studied the physical facts with care. They go no further than to raise grave doubts as to its truth. This being so, the jury had the right to believe Shephard's testimony; and, since we have repeatedly held that the failure to keep a continuous lookout, under such circumstances, does not, of itself, establish negligence as a matter of law, it is clear that the question of Shephard's contributory negligence was for the jury.

The complaint contained no allegation that the defendant was driving while drunk. The plaintiff opened his case by calling the defendant as an adverse witness. It appeared that he had spent the evening at a night club. Just before plaintiff rested, he recalled the defendant and asked him if he drank anything at the club before the accident. The court sustained the objection as being irrelevant to any issue tendered by the complaint. When the defendant was called as a witness on his own behalf, the question was again asked on cross-examination, and again objected to. After a long argument, in which the plaintiff cited the cases of *Bates v. Tirk*, 177 Wash. 286, 31 P. (2d) 525, and *State v. Birch*, 183 Wash. 670, 49 P. (2d) 921, the court ruled that it was not a proper matter to be brought out on cross-examination; but that, since the plaintiff had offered the evidence in his case in chief

and had been prevented by the court's ruling from introducing it, he might have the privilege of reopening his case for that purpose. This privilege the plaintiff accepted. Smith testified that he had two, or probably three, ordinary-sized glasses of beer between ten and twelve-thirty. Several witnesses, who later testified in his behalf, testified that he had no more than that.

As to this matter, appellant assigns error on two grounds, first, that the evidence was not admissible, and, second, that the manner of its admission out of order gave it undue prominence, to his prejudice. We think, however, the evidence was admissible on the authority of the cases cited; and it must be remembered that, but for defendant's objection, it would have been regularly admitted in the plaintiff's case in chief. Furthermore, we think the defendant suffered no prejudice. The court gave a most careful instruction as to the relation of the evidence to the issues, followed by the following additional instruction:

"The Court instructs you that no testimony, and especially that testimony which may bear upon the fact of defendant having consumed beer, is to be allowed by you to have any added weight or effect merely because it was received by this Court at one stage of the trial rather than at another stage thereof. Such testimony is to be considered and weighed by you wholly and entirely as a part of the mass of testimony in the case."

Appellant also assigns as error failure to give the following requested instruction and another, somewhat more in detail, but to the same general effect:

"Drunkenness is not an excuse for negligence. If you should find that plaintiff was prevented from using his senses by drunkenness or by reason of being under the influence of liquor and if you should find that plaintiff was injured on that account, you are instructed to return a verdict for the defendant."

It appears that a witness who arrived at the scene of the accident shortly after it occurred, when asked as to the plaintiff's condition, testified as follows:

"A. Well, he was moaning and groaning around. To my mind I thought he was drunk, but perhaps it was the wound and the bang on the head, I don't know. Q. Were you close enough to smell his breath? A. Well, yes, I did. I had had some beer on my breath, and I don't know, it might have been my own imagination."

There was no other testimony concerning the matter, and this is so unsubstantial that we think the court did not err in refusing to give an instruction based upon it.

Nor do we find any error in the refusal of the court to give a requested instruction regarding loitering, although there was an ordinance in effect in the city of Everett which provided:

"No person shall stand or loiter in such a manner as to interfere with or obstruct traffic."

There is no evidence to prove loitering. The request is based entirely upon the theory that the jury, by making certain mathematical computations as to time, distance, and the relative speeds of the car and the pedestrian, might possibly have arrived at the conclusion that the plaintiff took a rather long time in crossing the street, and, indeed, that is the most that the appellant claims. It is said in his brief:

"The jury may well have believed that respondent was not moving forward as a pedestrian ordinarily would, . . ."

A number of instructions are complained of, and among them, one which told the jury that a pedestrian, when lawfully using the public street, is not required to keep a continuous lookout. As there was evidence that the collision occurred on, or at least

very near, a crosswalk, we think the instruction entirely consistent with our past holdings in such cases as *Hillebrant v. Manz,* 71 Wash. 250, 128 Pac. 892; *Johnson v. Johnson,* 85 Wash. 18, 147 Pac. 649; *Olsen v. Peerless Laundry,* 111 Wash. 660, 191 Pac. 756; *Brown v. Nelson,* 149 Wash. 587, 271 Pac. 894; *Ahrens v. Anderson,* 186 Wash. 182, 57 P. (2d) 410; and many others.

■ There are a number of other assignments concerning the giving and refusal of instructions, some of which, if this opinion is to be kept anywhere within reasonable limits, must be disposed of by saying that they have been considered and found without merit. One of such assignments, however, cannot be so summarily dismissed. The court instructed the jury as follows:

"I instruct you as a matter of law that the life expectancy of a normal man of the age of fifty-seven years is 16.05 years." (Instruction No. 22.)

In the unusually long and carefully considered opinion which the trial court orally gave in ruling upon defendant's motion for a new trial, and which covered every contention now made by him as appellant here, the trial court dealt with the instant matter as follows:

"This Instruction No. 22 in the light of what I now understand, I think is to be tested by the application of my judgment as to whether or not, assuming it to have been erroneously given, it worked any prejudicial error. Higher courts will not reverse for non-prejudicial error. There is no reason why trial courts should grant new trials for mere naked error that worked no harm. I gave it, of course, with the conception that there was testimony in this record as to plaintiff's age and Mr. Bassett seems still to think there is. I don't know positively, but plaintiff was here before this jury. It was evident to every one of us that he was a man well in middle age; and conceiving of the ver-

dict as reasonable in its amount, as I have announced I do, I fail to see how the fact that I told this jury that plaintiff had the life expectancy of one of fifty-seven years can be said to have done any harm to anybody. If the amount of this verdict were such that I could conscientiously say that it was given by the jury under the misapprehension that this man had some greater life expectancy, my views would be different.

"If I were disposed to be in any large measure technical about this I would say that I don't think the exception ran to this instruction for any want of testimony as to age. My recollection is the exception ran to this instruction for want of any proof of the life expectancy, the years, because I do recall saying at the time counsel was taking exception, the court would take judicial notice of these mortality tables."

The record shows that the exception was taken as follows:

"We except to Instruction No. 22, which instructs the jury that as a matter of law the life expectancy of a normal man of the age of fifty-seven years is 16.05 years, upon the ground that there is no evidence whatsoever on that issue in the case."

This exception can scarcely be deemed to have called to the court's attention that the allegation as to plaintiff's age had been denied and not proven. But, however that may be, we agree with the trial court that no prejudicial error is shown. The plaintiff himself was objective evidence as to his age. 22 C. J. 787; *Suell v. Jones,* 49 Wash. 582, 96 Pac. 4; *Houston v. Quinn,* 168 Ill. App. 593; *Louisville & N. R. Co. v. Bean,* 49 Ga. App. 4, 174 S. E. 209.

The respondent had not worked at any regular occupation for a considerable time before the accident. In fact, he had been convicted of vagrancy in October and December of 1936. At the time of his injury, he was helping the gardener at Providence

hospital, receiving lodging and meals for that service, and "swamping out" evenings at a tavern, for which he received sporadic payments, indefinite in amount. These facts are urged by appellant for two purposes, first, in support of his contention that the court erred in giving an instruction permitting the jury to take into consideration impairment of earning power, and second, as supporting his assignment as to excessive verdict. As to the first of these contentions, the instruction complained of told the jury that it might consider:

". . . such loss of earnings, *if any,* as he has suffered in the past or is *reasonably certain* to suffer in the future as a result of said injuries; . . ." (Italics ours.)

We find the assignment of error without merit.

It is contended that the verdict is grossly excessive. It appears from the record that both bones of the respondent's right lower leg were broken and shattered, the tibia protruding through the skin. One rib was fractured in two places. The accident occurred on July 4, 1937, and plaintiff was confined in the hospital for more than nine months, and at the time of the trial his leg was still in a cast, the fifth he had been compelled to endure. At the time of the trial, March 21, 1938, a good union of the larger bone had not yet been secured, and it was believed that an operation would be necessary, at a cost of $250 for surgeon's fees and hospitalization for from two to three months at twenty-one dollars per week. The respondent had already incurred doctor bills amounting to $500, and a hospital bill of $939. As to whether he would ever have a complete recovery, the medical evidence was hopeful, but in doubt. It was the medical opinion that, taking the most optimistic view of the situation, he would not be able to work for at least six months

and his injured leg would be permanently slightly shortened. We, like the trial judge, are of the opinion that the verdict of seven thousand was˙ liberal, but unable to conclude that the amount is so large as to indicate passion or prejudice.

Finally, it is contended that a mistrial should have been declared on account of alleged misconduct of counsel during final argument, and that a new trial should now be ordered for the same reason. There is no stenographic report of the argument to the jury. Just what was said by respective counsel is vigorously contested in conflicting affidavits used upon the motion for a new trial and made a part of the record. We make no attempt to reconcile the irreconcilable, but rely upon the record as made by the court. Immediately after the jury had retired, the trial court summoned the reporter and dictated the following statement:

"THE COURT: Although it has not been requested that this Court do so, this Court now of its own initiative directs that the record shall be made to disclose as follows: That Mr. Bassett in his closing or rebuttal argument assumed to reply to statements made in argument by counsel for defendant, and especially Mr. Rucker, to the effect that the verdict and the amount thereof, if for the plaintiff, would be a matter of serious concern to the defendant, by asserting that those counsel—referring to counsel for defendant—knew that such would be of no concern to the defendant whatsoever and meant not a nickel to him; to which remarks counsel for defendant, Mr. Greathouse, informed the Court he took exception when Mr. Bassett said in substance in the course of argument that he reasserted that such would mean not a nickel to the defendant. If counsel deem that I have not fairly stated the situation I am open to suggestions. MR. BASSETT: I think you stated it very fairly except for one thing,—when they took exception I turned around and I said to him, 'Well, you invited it.' MR. GREATHOUSE: And it is true, coun-

sel said that. MR. BASSETT: Isn't that true? THE COURT: That is correct."

The affidavits of plaintiff's counsel, filed in resisting the motion for new trial, stated that Mr. Rucker, in presenting his argument for the defense, said, in substance, that the defendant Smith was a fine young man, just starting out in the business of life; and that, if the jury returned a verdict against him, it would jeopardize his entire future. This was categorically denied by controverting affidavits. After examining the conflicting affidavits, the court, in ruling upon the motion, said:

"I would not be disposed to quote Mr. Rucker in what he said. There is no record of it. The record does disclose that at the immediate time it was my impression that Mr. Rucker did state to the jury,—and such is now my impression,—those things which by their necessary intendment would have the jury believe that a verdict was placing a great burden on the young man in form of debt. . . . The reply to this on the part of Mr. Bassett, I think, must properly be said to have been invited, . . ."

Under the circumstances, we must accept the trial court's version as to what occurred. It follows that the motions for mistrial and new trial were properly denied. *Pickering v. Stearns,* 182 Wash. 234, 46 P. (2d) 394. See, also, *Kerns v. Couch,* 141 Ore. 147, 12 P. (2d) 1011, 17 P. (2d) 323; *Majestic Steam Laundry v. Puckett,* 161 Va. 524, 171 S. E. 491.

The judgment appealed from is affirmed.

STEINERT, MAIN, and GERAGHTY, JJ., concur.

BLAKE, C. J., concurs in the result.