[No. 32340. Department One. May 1, 1953.]

HARRY B. MYERS, *Appellant*, v. WEST COAST FAST FREIGHT, INC., *Respondent*.[1]

[1]Reported in 256 P. (2d) 840.

*Bassett, Geisness & Vance,* for appellant.

*Martin & Shorts* and *Lloyd W. Bever,* for respondent.

WEAVER, J.—The jury returned a verdict for defendant. Plaintiff appeals from a judgment of dismissal.

Appellant urges that the court erred when it gave instruction No. 17:

"You are instructed that when a pedestrian enters a highway at the place outside of a cross-walk, the law places upon the pedestrian a duty to maintain continuous observation and a constant look-out for approaching automobiles to avoid an accident."

Appellant's second assignment of error is directed to the court's refusal to give proposed instruction No. 6:

"You are instructed that if the driver of the defendant's truck actually saw plaintiff on the highway ahead of him and should have appreciated the danger, if any, of the situation but failed to exercise reasonable care to avoid the collision, such failure makes the defendant liable in this action, and you must find for the plaintiff even though the plaintiff may also have been guilty of negligence that continued up to the instant of injury."

The accident happened March 9, 1951, at 5:45 a. m. Appellant and another were driving a Los Angeles-Seattle Motor Express truck and semitrailer from Seattle to Los Angeles. The road, at the scene of the accident, was icy and slippery; it made an "S" curve just before it reached the summit. As the truck and semitrailer ascended the hill and entered the curve, it slid about four feet toward the center of the road. The wheels "spun out" and the rear end came to rest on, or just over, the center line of the road. Flares were placed ahead and behind the stalled vehicle. It was necessary to put on chains. Several other trucks stopped in the vicinity.

Appellant had placed chains on the ground so that his codriver could move the truck and semitrailer over them. He had just finished this when the accident happened. Appellant testified that he thought he was about two feet from the left side of the trailer. Respondent's driver testified that appellant was four to six feet from it. There was about twelve feet of highway available for respondent's truck to pass. Respondent's truck was about eight feet wide.

Appellant testified that he saw respondent's truck coming up the hill when it was four to five hundred feet to the rear of him.

The driver of respondent's truck testified that he was going about eighteen miles per hour (it would have taken approximately nineteen seconds for it to cover five hundred feet); that the truck he was driving had a special gear-system which made it difficult for it to "spin out"; that he decided to attempt to make the top of the hill without chains; that he believed the road clear, as he had met a truck which had passed appellant's truck; that he first saw appellant when he was seventy-five to one hundred feet from him; that appellant was standing in the traffic lane which respondent's truck must use to pass the stalled vehicle; that he blinked his lights and blew his horn twice; that had appellant taken one step forward he would have been in the clear; that he thought appellant would step clear of the oncoming truck; that when he saw appellant

was not going to move, he applied his brakes when he was thirty-five or forty feet from appellant; that he was not able to stop; that the truck was moving four or five miles per hour when appellant was hit.

Instruction No. 17 was preceded by instruction No. 16, in which the trial court charged:

"You are instructed that the plaintiff [appellant] under the law was a pedestrian at the time of the accident, and was obliged to comply with the traffic laws pertaining to pedestrians."

No error was assigned to this instruction, and it became the law of the case.

The exception to instruction No. 17 was:

"The plaintiff further excepts to the giving of Court's instruction No. 17, on the ground that it is not appropriate to this case, and that, assuming the plaintiff [appellant] had the status of a pedestrian, which I think probably is true, there was not the duty on him to maintain continuous observation or constant lookout, because he was at least entitled to, if not duty bound to, put on chains, which would preclude a duty for constant lookout and observation. THE COURT: The chains were on at the time of the collision. MR. GEISNESS: Technically, they were, and he said he just stood up and waved; but that is cutting it pretty thin."

We are foreclosed from considering how "thin" it was cut, for, by the law of the case, appellant was a pedestrian. His conduct must be gauged by the standard applicable to pedestrians upon the highway at places other than intersections. Being a pedestrian, we need not consider cases dealing with a person repairing, or in the act of removing a disabled vehicle from the highway.

RCW 46.04.400 (Laws of 1937, chapter 189, § 1, p. 835; Rem. Rev. Stat., Vol. 7A, § 6360-1) states:

" 'Pedestrian' means any person afoot."

RCW 46.60.250 (Rem. Supp. 1949, § 6360-99) provides:

"Every pedestrian crossing a roadway at any point other than within a marked crosswalk or within an unmarked crosswalk at an intersection shall yield the right of way to all vehicles upon the roadway."

■ It is true that appellant was not in the act of crossing a highway—he was standing upon the highway in the capacity of a pedestrian. This fact would not relieve him of the statutory mandate to yield the right of way to respondent's truck, for, as the court said in *Chadwick v. Ek*, 1 Wn. (2d) 117, 128, 95 P. (2d) 398:

"It would seem that the spirit of the 1937 act contemplates one standing or moving about upon the highway as well as one crossing or proceeding along the course of it."

■ Although the court in *Chadwick v. Ek, supra*, did not undertake to construe the statute with reference to the definition of a pedestrian and the duties imposed upon him by the act, the court did say that:

"A person who stands upon a highway must exercise reasonable care for his or her own safety. Whether the person has complied with this requirement, must depend upon all the circumstances of the particular case. Among the elements to be taken into consideration are the type of the highway, its locality, the mode of travel, the amount of traffic, the time of the occurrence, the weather conditions then existing, the purpose for which the parties were on the highway, and their opportunities to avoid injury."

In the instant case, appellant was aware of the condition of the highway. He knew that part of his truck extended into the curve. He was aware of the truck traffic; he was aware that other trucks, with or without chains, might approach from the rear on their way to the summit. The evidence shows that there was not only sufficient room for this to happen, but that a truck from the opposite direction had passed him.

Respondent cites *Johnson v. Johnson*, 85 Wash. 18, 147 Pac. 649, and *Crowl v. West Coast Steel Co.*, 109 Wash. 426, 186 Pac. 866, as authorities approving the "continuous observation and constant lookout" instruction. These cases are distinguishable.

The *Johnson* case was an intersection case. No question was raised as to the instructions. Of it, we said in *Wood v. Copeland Lbr. Co.*, 32 Wn. (2d) 490, 497, 202 P. (2d) 453:

"We are of the opinion that in the cited case [*Johnson*] it was not necessary, and that this court did not intend, to lay down or announce any rule relative to the rights or duties of pedestrians and motor vehicles at other than street intersections, as that was the only question before the court."

In the *Crowl* case, *supra*, it is evident that the opinion is based largely upon the particular ordinance there involved which provided that:

" 'Pedestrians shall cross streets *only* at street intersections . . `.' " (Italics ours)

thus making it *unlawful* for a pedestrian to cross a street at other than intersections and places designated as cross-walks. In the instant case, it was not *unlawful* for appellant to be upon the highway as a pedestrian.

█ As we said in *Crowl v. West Coast Steel Co., supra*:

"Circumstances may arise where the court may say, as a matter of law, that it would be the duty of the plaintiff in crossing the street to be constantly on the lookout to avoid danger." (p. 433)

Under the facts disclosed in *Wood v. Copeland Lbr. Co., supra*, the court found that such circumstances had not arisen. The court held that an instruction requiring a "continuous lookout for approaching traffic," under the facts of that case, amounted to a directed verdict. A different result was reached upon the facts in *Beireis v. Leslie*, 35 Wn. (2d) 554, 214 P. (2d) 194, wherein this court approved an instruction

" '. . . that as a matter of law, it was the duty of the plaintiff wife in this case in crossing the highway between intersections, if you find she did cross between intersections, to be *constantly on the lookout to avoid danger*.' " (Italics ours.) (p. 568)

█ Instructions must be considered as a whole. Even though a detached statement may, under the facts, be technically erroneous, it is not prejudicial error if the entire instructions fairly state the law. *Herndon v. Seattle*, 11 Wn. (2d) 88, 118 P. (2d) 421, and cases cited.

A reading of the instructions given shows that appellant used instruction No. 17 out of context. Following instruction No. 17, the exactness of appellant's duty under the circumstances was further defined in the instructions as follows:

"No. 18  You are instructed that the law imposes a duty upon a pedestrian to use his senses and observe traffic to the same extent that an ordinarily careful and prudent person would exercise under the same or similar circumstances, and if you find from the evidence in this case that the plaintiff should, in the exercise of ordinary care, have seen the defendant's truck, and by the observance of ordinary care on his part could have avoided the accident, then you are instructed that he would be guilty of contributory negligence, and that the plaintiff cannot recover in this case. However, if you should find that he did exercise such care for his own safety, then he would not be guilty of contributory negligence.

"No. 21  A duty to look out for and yield the right of way to vehicles on a public highway is not an absolute duty to observe and avoid such vehicles. The duty to look out for and yield the right of way is fully discharged if the person who has the duty uses reasonable care and prudence to look out for and yield such right of way under all of the circumstances and conditions then and there existing, even though he actually fails to observe a vehicle and get out of its way."

■ Thus, the seemingly inflexible duty imposed upon appellant by segregating instruction No. 17 was modified. The jury was not misled. Appellant's duty, under the facts, was to keep such lookout as an ordinarily careful and prudent person would have kept under the same or similar circumstances. The circumstances of this case required the exercise of care commensurate with the danger of which appellant had or should have had knowledge.

In the light of the entire instructions, the court did not err in giving instruction No. 17.

■ ■ Appellant did not yield the right of way as the statute required. This is contributory negligence on his part as a matter of law. *Shelton v. Bennett,* 32 Wn. (2d) 529, 202 P. (2d) 461. May he escape the effect of his contributory negligence by invoking the doctrine of last clear

chance as sought in the rejected instruction? We think not, under the facts of this case.

Respondent's truck was fifty-five feet long. It weighed approximately 64,000 pounds. At eighteen miles per hour, it would cover one hundred feet in slightly under four seconds.

Appellant came into view of respondent's driver when he was seventy-five to one hundred feet away. The driver had the right to assume that appellant would yield the right of way. When he saw and appreciated appellant's peril, which peril did not become evident until it appeared that appellant was not going to yield the right of way, he had the duty to avoid injuring him. He attempted to meet this duty, when the necessity arose for him to do so, by applying the brakes when the truck was thirty to thirty-five feet from appellant. As we said in *Shiels v. Purfeerst,* 39 Wn. (2d) 252, 257, 235 P. (2d) 161:

"He simply failed in his effort to escape the natural results of the emergency created by respondent's [appellant's] negligence."

The facts of this case do not justify, as a matter of law, the giving of an instruction upon the first phase of the doctrine of last clear chance. *Shiels v. Purfeerst, supra.*

The judgment entered upon the verdict of the jury is affirmed.

GRADY, C. J., MALLERY, HILL, and OLSON, JJ., concur.

---

June 25, 1953. Petition for rehearing denied.