[No. 27145. Department Two. July 25, 1938.]

WILLIAM KELLUM, a Minor, by Claude Kellum, his Guardian ad Litem, et al., Respondents, v. J. A. ROUNDS et al., Appellants.[1]

Snively & Bounds and Owen Clarke, for appellants.
Sandvig & Walters, for respondents.

[1] Reported in 81 P. (2d) 783.

ROBINSON, J.—On May 14, 1937, William Kellum, just after alighting from a school bus, came in violent contact with an automobile driven by J. A. Rounds. At that time, William Kellum was fourteen years of age. He and his father brought suit against Rounds and wife, the boy seeking recovery for his injuries, the father for expenses incurred on behalf of his son. They received a verdict for $2,535.50, upon which, after denial of the usual post-trial motions, judgment was entered against the Rounds. Upon this appeal, the only question presented is—Did the plaintiffs make out a case for the jury?

The accident occurred on the Wenas road a mile and one-half north of Selah, Washington, at about 3:50 p. m., on a bright and clear day. This road is an arterial, with an eighteen foot oiled surface, and runs in a general northerly and southerly direction. At the point of the accident, it is intersected by a gravel road running east and west.

At the time of the accident, the Selah school district was operating two busses on that road, a large yellow one and a smaller one, painted blue. The blue bus was old. Its paint had faded, and the words "School Bus," in four-inch black letters on the rear of the bus, could be read, if at all, with difficulty.

Mr. Rounds testified that he wished to locate a certain family living on the Wenas road. Knowing one of the children of the family by sight and that it was her custom to ride home from school on the yellow bus, he concluded to follow it in the hope of seeing her alight, and thus locate the family residence. He followed the yellow bus at the rate of eighteen to twenty miles per hour, keeping forty or fifty feet behind it. As he afterwards learned, the blue bus was traveling immediately ahead of the yellow bus, but he did not see it at all until he drew alongside it after it

had stopped at the side of the road. He further testified that, at the instant he became conscious of the presence of the blue bus, and *being then about half-way past it,* he saw, out of the corner of his right eye, a boy run out from in front of the bus. The boy rounded the front of the bus and plunged diagonally into the side of his car, smashing the glass out of the right front window with his head. There was no time to stop, slow down, or to do anything to avoid him.

The driver of the yellow bus testified that he drove about eighteen to twenty miles an hour, thus confirming Mr. Rounds' estimate of his own speed. The driver also testified, and in these matters he was corroborated by the driver of the blue bus and several of its school children passengers, that the blue bus was completely stopped when he passed it, and nearly, but not quite, off the oiled portion of the road.

William Kellum testified, and in this he was corroborated by the driver of the blue bus and several of his schoolmates, that he was not the first, but among the first, of the school children to alight at that stop. He further testified, and in this he was corroborated by one of his schoolmates, that, as he went around in front of the bus, he looked in both directions for other traffic. He explained, or attempted to explain, that he failed to see the Rounds' car approaching because the bus body, which is very much wider than the front part of the bus, obstructed his rearward view. He did not know with what part of the Rounds' car he came in contact. Two of the school children, however, testified that he ran "into the side of the car." The physical facts appear to be in harmony with this evidence.

■ Previous to April 1, 1937, the following statute, Rem. Rev. Stat., § 6362-3 [P. C. § 196-3], subd. 4, Laws of 1927, p. 770, § 3, was in force:

"It shall be the duty of every person operating or driving any motor vehicle upon any highway of this state to come to a full stop before passing any bus or stage loading or discharging school children;"

On April 1, 1937, six weeks before the accident, this statute was superseded by § 45, chapter 189, Laws of 1937, p. 868, Rem. Rev. Stat., Vol. 7A, § 6360-45 [P. C. § 2696-782]. This section reads as follows:

"All school busses shall be equipped with a 'stop' signal upon a background not less than twelve (12) inches square displaying the word 'stop' in letters of distinctly contrasting colors not less than eight (8) inches high. Such sign shall display both to the front and rear of such school bus, manually controlled by the operator of the school bus, extending to the left of the body and shall be displayed only when such school bus is receiving or discharging school passengers and shall be released only when such school passengers are received or discharged and have not further need of protection in crossing the public highway or otherwise.

"It shall be unlawful for any person operating a motor vehicle in either direction upon a public highway to fail to bring such vehicle to a complete stop at least 20 feet away and on the approach to any school bus on the roadway or off the roadway displaying such stop signal and remain standing until the same is released: *Provided,* Compliance with the provisions of this section shall not relieve any motor vehicle operator of the further duty to exercise reasonable care in approaching or passing any such school bus."

There is evidence that the blue bus was equipped with a stop signal, but not of the size and character described in the statute. There is no evidence that the stop signal was used. But this could have had nothing to do with the accident, since Rounds did not even see the bus itself.

Mr. Rounds attempted to excuse his failure to comply with the statute by testifying that he did not see the

blue bus at all until he had arrived alongside it at a point about midway of its length. But, according to his own evidence, he was traveling forty or fifty feet behind the yellow bus, and there therefore came a time when the two busses were right side by side forty or fifty feet ahead of him. It would seem impossible for him to avoid seeing the blue bus while traveling that forty or fifty feet had he been watchful and attentive. To say that he did not see it, is to confess that he was not looking ahead. Nor was the fact that the legend "School Bus" was no longer legible a sufficient excuse for his failure to stop; first, because he did not see the bus at all, and second, because the evidence is undisputed that the bus had glass windows all around, both on the sides and on the back, through which a number of the twenty-five or thirty children riding in it were plainly visible. The question as to Rounds' negligence was clearly a question for the jury.

The appellants contend, and with much reason, that the boy plaintiff was, as a matter of law, guilty of contributory negligence. The appellants cite Blashfield, Cyclopedia of Automobile Law and Practice, Permanent Edition, § 1420; *Bowers v. Colonial Warehouse Co.,* 153 Minn. 425, 190 N. W. 609; *Steele v. Hamilton,* 218 Mich. 522, 188 N. W. 345; *Dando v. Brobst,* 318 Pa. 325, 177 Atl. 831; *Bailey v. Fore,* 163 Va. 611, 177 S. E. 100; *Brown v. Page,* 98 Conn. 141, 119 Atl. 44; *Jean v. Nester,* 261 Mass. 442, 158 N. E. 893; *Jones v. Florios,* 248 Mich. 153, 226 N. W. 852, as well as a number of our own cases, particularly *Harder v. Matthews,* 67 Wash. 487, 121 Pac. 983; *Stueding v. Seattle Electric Co.,* 71 Wash. 476, 128 Pac. 1058; *Woodward v. Seattle,* 140 Wash. 83, 248 Pac. 73; *McLeod v. Kjos,* 150 Wash. 637, 274 Pac. 180; *Gottstein v. Daly,* 166 Wash. 582, 7 P. (2d) 610; *Hamblet v. Soderburg,*

189 Wash. 449, 65 P. (2d) 1267; and *Estill v. Berry*, 193 Wash. 10, 74 P. (2d) 482.

To review the above cases, or any considerable portion of them, would unduly extend this opinion. In some of them, including cases from this court, it is said that one who walks or runs into the side of an automobile is guilty of contributory negligence. Any generalization of that kind, however, must be understood and appraised in the light of the facts of the case in which it is made. In many of the cases cited, indeed in substantially all of them, the plaintiff went out from the curb or roadside into a place where traffic was to be expected and without looking at all. In some of them, one or another of the elements presented here is present, but in none of them are all of those elements presented in combination.

In this case, the plaintiff testified that he looked and gives some explanation, although a none too satisfactory one, for his failure to see the Rounds' car. He had ridden on the school bus every school day from November, 1936, to May 14, 1937, the day of the accident. He knew that other traffic stopped while school busses were discharging passengers, and therefore had some reason to expect that for the moment his path across the roadway would be clear. And, finally, he was but fourteen years and five months of age, and was, therefore, not necessarily held to the same amount of care that an adult would be. We think that these three circumstances in combination made the question of his contributory negligence so far debatable that reasonable men might well differ concerning it. The case was, therefore, properly submitted to the jury for decision, and the trial court rightly refused to set aside its verdict.

The judgment appealed from is affirmed.

MILLARD, BLAKE, GERAGHTY, and SIMPSON, JJ., concur.