[No. 30375. Department One. March 18, 1948.]

THEODORE J. HINCKEL, a *Minor, by T. P. Hinckel, his Guardian ad Litem, et al., Respondents,* v. ALBERT R. STEIGERS *et al., Appellants.*[1]

W. E. *DuPuis* and *Lloyd Bever,* for appellants.

*Richard B. Ward* and *John J. Kennett,* for respondents.

MILLARD, J.—As a result of his collision, in the city of Seattle, March 12, 1946, with an automobile owned by de-

[1] Reported in 191 P. (2d) 279.

fendant marital community and operated by defendant husband, Theodore J. Hinckel, a minor, sustained personal injuries. An action was instituted by the boy's father, as guardian *ad litem*, to recover against defendants for the personal injuries sustained by his minor son and to recover for certain expenses of hospitalization and services of physicians incurred by the father. Trial of the cause to a jury resulted in verdict in favor of plaintiffs. From the judgment entered, motions for judgment notwithstanding the verdict and for a new trial having been overruled, defendants appealed.

Counsel for appellants contend that respondent minor was not struck by, but that, without looking for the approaching automobile, he walked or ran into the side of, appellants' automobile; therefore, the jury should have been instructed, as appellants requested, that the boy was guilty of contributory negligence as a matter of law, which barred his recovery.

The verdict reflects acceptance by the jury as true of the evidence, which is summarized as follows: The accident occurred at the intersection of Nineteenth avenue and east Madison street in the city of Seattle, about four o'clock the afternoon of March 12, 1946, when the streets were dry and there was no atmospheric condition or obstruction which would interfere with the boy's view of traffic on the highway. The course of Nineteenth avenue is northeasterly and southwesterly. The course of east Madison street is east and west. A Chevrolet automobile, owned by appellants and operated by appellant husband, was proceeding east on east Madison street at a speed of twenty-five to thirty miles an hour.

The injured boy was eleven years of age at the time of the accident. From the age of seven and one-half years he has been afflicted with epilepsy and, at the time of the accident, was under medical care for that disease. In many respects, the boy was not normal. He was awkward, and his muscular co-ordination was affected; that is, he walked with his feet wide apart, held his hands out for balance, and would lean forward as he walked. He did not indulge in any of the

sports, such as baseball and basketball, which other boys enjoy. He suffered periodic attacks of epilepsy and would momentarily lose consciousness. These seizures were at irregular intervals of three, four, or six weeks. He wore glasses, and could see distant objects more clearly than those near him.

Physicians advised his parents that, as much as possible, the boy should be induced to lead a normal life so as not to destroy his initiative. He was permitted to ride a bicycle, and, prior to the accident, he had a "shopping news" route. In this work he wheeled his bicycle, put his shopping news over a carrier on the back of the bicycle, and left a copy of the paper at each home. A year subsequent to the accident, and about two weeks prior to the trial of this action, he commenced delivery of a daily newspaper. At the time of the trial, he was in the fifth grade at a parochial school. He lived with his parents at Thirty-eighth avenue, near Madison street. In proceeding to his home from school, he would ride on a bus on Nineteenth avenue and go south to Madison street, where he would transfer to the Madison street bus and go east on that bus to Thirty-eighth avenue. East Madison street, at its intersection with Nineteenth avenue, is forty-two feet wide and slopes down hill on an 8.5 per cent grade from west to east.

The Nineteenth avenue bus, on which the boy was riding, arrived at the intersection of east Madison street, turned a corner westerly into east Madison street, and stopped in the bus zone on that street just above the northwest corner of the intersection. After the bus stopped, the rear end was about thirty-two feet west of the west line of the north-south pedestrian lane across east Madison street. The boy got off the bus, went around behind the bus, and started across east Madison street. Two older boys accompanied him across the street. The evidence is in conflict whether the boy was walking rapidly or running.

When he got close to the center line of the street, one of the boys looked to his right, or to the west, up Madison street, and saw appellants' automobile approaching. This boy slowed down to await passage of the automobile, but

the Hinckel boy continued on his course and collided with the automobile. The point at which the collision took place is in, or very close to, the west line of the north-south pedestrian lane, from sixteen to twenty feet north of the south curb of east Madison street. The Hinckel boy collided with, or was struck by, the left side of the left front fender.

The noise of the approaching automobile was heard by him, but he never saw the car. Appellant husband had an unobstructed view ahead of him as he operated the automobile down the hill on east Madison street approaching the intersection, but at no time saw either of the two boys who accompanied the Hinckel boy across the intersection and hesitated at the center line to permit the automobile to pass. Although he continued to look ahead until he arrived at a point eight feet west of the west line of the north-south pedestrian lane, he did not see anyone crossing the street. He testified that he did not see the Hinckel boy until he was about four feet east of the east line of the north-south pedestrian lane, when, out of the corner of his eye, while he was looking to the right or to the east, he saw something come into contact against the left, or west side, of his car.

▮ The general rule as to the standard of care required of children is stated as follows, in the annotation on p. 7 of 107 A.L.R. 1:

"It is a well-settled general rule that an infant, at least until he has reached the later years of infancy, is not bound to exercise the care required of an adult, and that the standard by which to measure his conduct, as regards the question of contributory negligence, is that ordinarily exercised by children of the same age, capacity, discretion, knowledge, and experience, under the same or similar circumstances."

The rule is discussed as follows, in 1 Shearman and Redfield on Negligence (Rev. ed.) 231, § 94:

"An infant may be of such tender years as to be incapable of personal negligence. At such age the infant is termed *non sui juris*, and it is then—if at all—that the infant is subject to the doctrine of imputed negligence.

"Later, children emerge from this condition. They are then responsible, subject to the limitations stated in the

preceding section, for their failure to exercise reasonable care for their own protection.

"Difficulty has arisen in the determination of when an infant ceases to be *non sui juris* and becomes responsible for his negligence. Similar difficulty surrounds the question of when the maturing infant's capacity so far approximates that of an adult that the infant may no longer claim relaxation of the requirement of care imposed upon an adult.

"A definite age limit, arbitrarily fixed for application in all cases, would have only its definiteness to commend it. 'A child's age does not alone determine its capacity to care for itself and to avoid dangers which may threaten. The law does not disregard variations in capacity among children of the same age, and does not arbitrarily fix an age at which the duty to exercise some care begins or an age at which an infant must exercise the same care as an adult.'

"The proper rule would seem to follow that each particular case must be separately considered, with no undue regard for the ruling made with relation to a certain age in some other case. 'Determination of the degree of care which may be expected of children is based upon factors which the jury can weigh in the light of their experience at least as well as judges. It does not require any special training or learning, which judges are supposed to possess in higher degree. Except in cases where the judge can safely decide that reasonable jurors would arrive at the same determination, the question of a child's capacity to take care of itself should be left to the determination of the jury.' "

In *McQuillan v. Seattle,* 10 Wash. 464, 38 Pac. 1119, 45 Am. St. 799, we said that, generally, a question of contributory negligence is for the jury to determine from all of the facts and circumstances of the particular case, and it is only in rare cases that the court is justified in withdrawing that question from the jury.

See, also, *Kellum v. Rounds,* 195 Wash. 518, 81 P. (2d) 783. In that case, the injured school boy, who ran around the front of a school bus and plunged into the side of a passing automobile, was fourteen years old and he looked for traffic and could see none, his view being obstructed by the school bus. We held that the boy was not guilty of contributory negligence as a matter of law.

In *Steele v. Northern Pac. R. Co.,* 21 Wash. 287, 57 Pac. 820, we held that an attempt of a fourteen-year-old boy to

cross a railroad track at a street crossing at which his view was unobstructed was not, as a *matter of law*, such contributory negligence as precluded recovery for injuries sustained from being struck by detached cars approaching the crossing without warning or signal, while stepping back to avoid an engine approaching on another track, which was in front of the cars when first seen by the boy. We said:

"It must be admitted that the authorities are not uniform, so far as the question of contributory negligence is concerned, but the great weight of authority is to the effect that, before a court will be justified in taking from the jury the question of contributory negligence, the acts done must be so palpably negligent that there can be no two opinions concerning them."

In *Schroeder v. Baumgarteker*, 202 Cal. 626, 262 Pac. 740, where the question was presented whether children of the ages of eleven to thirteen years are to be held guilty of contributory negligence as a matter of law, the supreme court of California stated:

"But beyond this and in response to the argument that the plaintiff, upon the state of the evidence, as the appellant views it, should be held to have been guilty of contributory negligence as a matter of law, the current of authority is against that contention and is strongly in favor of the more humane view that the question as to whether or not children of the ages of these two boys are to be held guilty of contributory negligence so as to prevent their recovery in an action of this character is, in most cases, a question of fact for the jury, and that in cases wherein the trial court, with the evidence and witnesses before it, has ruled that the question as to whether or not the injured child was guilty of contributory negligence was a question of fact for the jury, its ruling in that regard will not be disturbed upon appeal."

In holding that a boy thirteen years of age may be guilty of contributory negligence as a matter of law, we stated in *Masterson v. McGoldrick Lbr. Co.*, 128 Wash. 1, 221 Pac. 990, that it is only when an infant's conduct is such that reasonable minds may not differ upon his ability to comprehend the entire situation and dangers attendant thereupon, that the court may, as a matter of law, hold such infant guilty of contributory negligence.

*Sakshaug v. Barber,* 23 Wn. (2d) 628, 161 P. (2d) 536, was an action for the wrongful death of a boy twelve years old who, while riding a bicycle, collided with an automobile while he was making a left turn. We held that the question of the sufficiency of the signal given by the boy of his intention to turn left, was one for the determination of the jury. We further held that, in considering the question relative to motion notwithstanding the verdict, no element of discretion is present, and the motion should not be granted unless the court can say that there is neither evidence, nor reasonable inference from the evidence, sufficient to sustain a verdict, and that the evidence must be viewed in a light most favorable to the parties against whom the motion is made, and that all material evidence favorable to the parties benefited by the verdict must be taken as true. If there is substantial evidence to support the verdict, it follows that the motion should be denied.

In *Wickman v. Lundy,* 120 Wash. 69, 206 Pac. 842, an eleven-year-old boy, while walking across Rainier avenue in Seattle, was struck by an automobile between the intersection of that avenue and Walden street. We affirmed judgment entered on the verdict in his favor. The boy testified that he looked, but did not see the approaching automobile. He testified the reason for his failure to see the approaching automobile was that his vision was obstructed by a telephone pole which blocked his vision when he looked. He did not look again. When he had proceeded a few feet into the intersection, he was struck by the automobile. Defendant insisted that the boy was guilty of contributory negligence as a matter of law, which barred his recovery. We affirmed the judgment on appeal in favor of the plaintiff. We held that the question of contributory negligence was under all the circumstances one for the jury. See, also, *Jones v. Davies,* 133 Cal. App. 389, 24 P. (2d) 364, in which the court held that when a boy ten years old crosses a highway and is injured by an automobile, even though the boy fails to look before crossing, the question whether he is guilty of contributory negligence is usually and naturally a question of fact.

■ The defective eyesight of the boy, the handicap of epilepsy and other facts recited above, in addition to the fact that the boys crossing the street with Theodore J. Hinckel occupied a position to the right of Theodore, which may have obstructed the boy's view up the hill and created a blind spot for him which prevented his observing appellants' automobile coming down the hill, were such that the trial court could not rightly say that the boy was clearly and palpably negligent, and that no two reasonable minds could differ in that conclusion. It follows that the question whether the boy was guilty of contributory negligence which bars recovery, was one for determination of the jury.

■ Appellants next complain of admission of the testimony of a stenographer over objection. Two days after the accident, the stenographer called at the home of appellants and made a record, by the medium of shorthand notes, of a conversation between an investigator and appellant husband, respecting the accident. Although this stenographer, when called as a witness on behalf of respondents, stated he had no independent recollection of the conversation, he was permitted to read his notes and testify what the questions and answers were at the time of the conversation between the investigator and appellant husband. The objection of appellants should have been sustained and the testimony excluded. In *Preston v. Metropolitan Life Ins. Co.*, 198 Wash. 157, 87 P. (2d) 475, we held that the testimony of a stenographer as to the questions by a witness on a previous occasion, was properly excluded where the stenographer testified that she had no independent recollection of the questions and answers and that she had to rely solely on the notes which she took at the time.

■ It does not follow, however, that the foregoing error was prejudicial. Error in admitting incompetent testimony is cured by subsequent proof of the same facts by competent evidence. The incompetent evidence was merely cumulative proof of facts otherwise established by competent evidence, hence the error is harmless. *Peterson v. Tull*, 85 Wash. 546, 148 Pac. 598; *Askey v. New York Life Ins. Co.*, 102 Wash. 27, 172 Pac. 887, L. R. A. 1918F, 267; *Jacobs v.*

*Burke,* 168 Wash. 644, 13 P. (2d) 30; *Yakima First Nat. Bank v. Pettibone,* 182 Wash. 663, 47 P. (2d) 997.

Immediately after the stenographer was on the stand, the investigator who accompanied him to the home of appellant, testified on behalf of respondents. Without objection, this witness testified clearly on all details of the interview with appellants. The facts, improperly shown by admission of testimony of the stenographer, were established by testimony of the investigator, and this was competent evidence.

The judgment is affirmed.

MALLERY, C. J., SIMPSON, SCHWELLENBACH, and HILL, JJ., concur.