[No. 30516. Department One. February 7, 1949.]

CARROLL WILLIAM WOOD, *by Estelle Wood, his Guardian ad Litem, Appellant*, v. COPELAND LUMBER COM-PANY *et al., Respondents.*[1]

[1]Reported in 202 P. (2d) 453.

*Congdon & Clemans* and *Stanley N. Kasperson*, for appellant.

*Kahin, Carmody & Pearson*, for respondents.

JEFFERS, C. J.—This action was commenced in the superior court for King county by Estelle Wood, the mother and duly appointed guardian *ad litem* of Carroll William Wood, a minor aged thirteen years, against Copeland Lumber Company, a corporation, and Frank Pitardi, to recover damages for personal injuries alleged to have been received by the minor on February 28, 1946, as the result of his being struck by a truck owned by defendant Copeland Lumber Company and being driven and operated at the time of the accident by defendant Pitardi, for and on behalf of the lumber company.

It was alleged that the sole and proximate cause of the accident and resulting injuries to Carroll Wood was the negligence of Frank Pitardi in the operation of the truck, which negligence consisted of the following acts and omissions:

"(1) In operating defendant's truck at a high, reckless and unlawful rate of speed.

"(2) In failing to have said truck under control.

"(3) In driving said truck to its left or east side of said street.

"(4) In failing to accord to the plaintiff the right-of-way to which he was entitled.

"(5) In failing to keep a proper lookout or any lookout at all for pedestrians on said street.

"(6) In failing to sound a horn or other signal device when the operator of defendant's truck saw, or in the exercise of reasonable care, should have seen that the collision with plaintiff was imminent.

"(7) In driving defendant's truck off the main traveled portion of said street so as to strike plaintiff herein.

"(8) In operating defendant's truck at all times herein mentioned in a careless, reckless and negligent manner."

Defendants by their answer admitted that on the date and at the time mentioned, Carroll Wood sustained injury; that such injury was sustained by his coming in contact with a lumber truck driven by Frank Pitardi; that the truck was being driven for and on behalf of defendant Copeland Lumber Company; that the accident which caused the minor's injury occurred at or near the east side of Twenty-first avenue southwest, in Seattle, Washington.

Defendants denied the other material allegations of the complaint, and alleged affirmatively that the injury, if any, suffered by the minor was due to his negligence, in that

". . . he ran out into the street and into the truck of the defendant, the Copeland Lumber Co., a corporation, between intersections and without warning while chasing a ball with which he was playing which had been thrown into the right-of-way of the truck operated by the defendant Frank Pitardi."

Plaintiff by her answer denied the affirmative matter contained in defendants' answer.

The cause came on for trial before the court and jury on or about September 10, 1947, and thereafter, on September 18th, the jury returned a verdict in favor of defendants. On September 20th following, plaintiff filed alternative motions for judgment notwithstanding the verdict and for new trial. These motions were denied, and on October 20, 1947, a judgment was entered on the verdict in favor of defendants and dismissing the action. Plaintiff has appealed from the judgment entered.

The assignments of error all relate to the denial by the court of appellant's motion for new trial, and consist specifically of the following: in submitting to the jury instruction No. 14, which states:

"Under the ordinances of the City of Seattle, vehicles have the right of way over pedestrians at all points upon the public streets except at the intersections and crossing thereof.

"You are instructed that the term 'right of way' means the right to proceed. *It puts the necessity of continuous observation and avoidance of injury upon the pedestrian when in the street at a place other than a crosswalk.* You are instructed that the plaintiff Carroll Wood was under the necessity of exercising such observation in this case, and if he did not do so, he would be guilty of contributory negligence," (italics ours)

and instruction No. 19, which we quote:

"The plaintiff Carroll William Wood was under the duty to exercise his ordinary faculties for his own safety in crossing a public highway between intersections and under a duty to keep *a continuous lookout for approaching traffic.* Did he, under the circumstances, exercise such care and vigilance? Did he, under the circumstances, keep a reasonable and continuous lookout for traffic? If his not doing either proximately caused the accident, he cannot recover.

"You are instructed that if you find from the evidence in this case that a proximate cause of injury, if any, to the plaintiff Carroll Wood, was his crossing a public street in the City of Seattle between intersections while failing to look out for vehicles, and that he did not use reasonable care under the circumstances in doing so, then I instruct you that the plaintiff Carroll Wood was guilty of contributory negligence and that, regardless of any negligence on the part of the defendant's driver, your verdict must be for the defendant"; (italics ours)

and the refusal of the court to submit to the jury the following instruction requested by appellant:

"There is one doctrine under which contributory negligence may not defeat the plaintiff's right to recovery, and that is known as the doctrine of the last clear chance. If, in this case, Billy Wood was negligently rushing across the street and into danger, and if the driver saw, or in the use of reasonable care should have seen, him thus negligently rushing into danger, in time, by the exercise of reasonable care, to avoid the accident, and failed to exercise such care when, had he done so, the accident would have been averted, then, in that case, negligence of the driver and not of the boy would constitute the proximate cause of the accident."

Appellant contends that instructions Nos. 14 and 19 contained a misstatement of the test of contributory negligence and the standard of duty required of appellant, and she particularly contends that the following portion of instruction No. 14, to wit: "It puts the necessity of continuous observation and avoidance of injury upon the pedestrian when in the street at a place other than a crosswalk," and the following words in instruction No. 19, to wit: "Under a duty to keep a continuous lookout for approaching traffic," were prejudicial and harmful, and not a proper statement of the law under the facts in this case. Appellant further contends that, under the facts in this case, the only duty imposed upon Carroll Wood was that he exercise that degree of care which would reasonably and ordinarily be expected of a boy of his age, intelligence, and experience, under like circumstances and conditions.

While no contention is made that there was not sufficient evidence to justify the jury's verdict, we are of the opinion that a brief statement of some of the facts should be set out, for the reason that whether or not the court erred in giving instructions Nos. 14 and 19 depends to some extent upon the particular facts in this case, for we stated in *Crowl v. West Coast Steel Co.*, 109 Wash. 426, 433, 186 Pac. 866:

"Circumstances may arise where the court may say, as a matter of law, that it would be the duty of the plaintiff in crossing the street to be constantly on the lookout to avoid danger."

Carroll Wood, at the time of the injury, was thirteen years of age. Just prior to the accident he was playing handball with his friends, Harold Tuffs and Jerry Moore, the latter two boys being about the same age as Carroll. In playing this game, the boys were throwing the ball up against the side of the home of Jerry Moore, which is situated on the west side of Twenty-first avenue southwest, in Seattle. Twenty-first avenue southwest is a graveled street running in a northerly and southerly direc-

tion. There are no sidewalks on either side of the street. There is a grassy strip along the east side of the street, and to the east of this grassy strip is a fence. The accident happened at about 4:45 p. m., February 28, 1946, at which time the visibility was good, and there was no traffic on the street other than the truck being driven by respondent Pitardi.

Pitardi had turned on to Twenty-first avenue south of where the boys were playing their game, and had proceeded north looking for a certain address. He had a load of two-by-fours on his truck, which was a 1941 GMC one and one-half ton truck. He had driven north for some distance beyond the point where the boys were playing, and failing to find the number, he turned around and proceeded south down the street again. There is a grade to the south on this street. As to what happened thereafter, so far as the actions of Carroll Wood are concerned, the speed of the truck, and the point where either the truck struck Carroll or Carroll ran into the truck, the testimony is in dispute.

Pitardi's testimony generally is to the effect that when he was about forty-five feet north of where the boys were playing, he observed the ball go over Carroll Wood's head; that Carroll turned around and chased it across the road; that when he (Pitardi) saw Carroll crossing the road, he began to swerve to the left to avoid him, thinking that the boy would stop or go back; that he applied his brakes and skidded on to the grassy strip on the east side of the road; and that Carroll ran into the back of the truck, or the lumber, after Pitardi had stopped out on the grassy strip.

The testimony of Carroll Wood, supported by one of the boys who were playing with him, was to the effect that before starting across the street after the ball, he looked both ways and saw the truck; that he did not know just how far away the truck was; that he judged he had enough time to cross the street, his own words being, "I did know I had lots of time to cross the street";

that he had crossed the street and was on the grassy strip when he saw the truck bearing down on him and attempted to escape, but the truck swung around and struck him.

There was also testimony on behalf of appellant that the truck skidded some seventy feet on the grass before stopping. The truck driver testified that he skidded about twenty-five feet. There is a dispute as to the speed of the truck, testimony being given on behalf of appellant to the effect that the truck was traveling fast, while Pitardi testified he was traveling at only about twenty-five miles per hour. Pitardi testified that he sounded his horn, but on the other hand the testimony of appellant's witnesses was to the effect that no horn was sounded. The point at which the boy ran or trotted into the street was not at an intersection.

We are of the opinion that there was evidence in this case from which the jury could have found negligence on the part of the driver of the truck. We are also of the opinion that, in view of the admission of Carroll Wood that he did not keep a continuous lookout for the truck after starting to cross the street, instructions Nos. 14 and 19 practically amounted to a directed verdict.

The particular portions of instructions Nos. 14 and 19 to which we have heretofore referred, and to which appellant specifically objects, are apparently based upon certain statements found originally in the case of *Johnson v. Johnson,* 85 Wash. 18, 147 Pac. 649, which are thereafter referred to in certain subsequent cases up to and including *Ross v. Johnson,* 22 Wn. (2d) 275, 155 P. (2d) 486. We have given considerable time to an investigation of these cases. A reading of the *Johnson* case, *supra,* will reveal that, in the first place, it was an intersection case. In the cited case, the accident happened at about nine-thirty o'clock in the evening at the intersection of Fourth avenue and Spring street in Seattle. No question was raised as to the instructions. We quote the part of the opinion which apparently the trial court in the instant case believed afforded a legal basis for the instructions now before us:

"The inquiry is thus narrowed to this: was the respondent, as a matter of law, guilty of contributory negligence in not continuously observing the automobile, which she saw a block distant when she entered upon the crossing, in order to avoid being run down by it? By an ordinance introduced by appellant, the pedestrian is given the right of way over street crossings. By another ordinance, introduced by respondent, automobiles are prohibited from traveling over street crossings in business districts at a rate of speed greater than eight miles an hour. . . .

"If the burden is placed upon the pedestrian, who when starting across a well-lighted street at a crossing sees an automobile a full city block distant, to thereafter continuously look up and down the street to avoid being run over on pain of being charged, as a matter of law, with contributory negligence, then the concession that, as a matter of law, the pedestrian has the right of way at such crossings is an empty fiction. No greater care than this constant observation *could be required at any other place on the street*. The term 'right of way' must have some bearing upon the relative rights, hence on the relative care required of the parties. *If a pedestrian must exercise the same care of continuous observation at the crossings as in the middle of the block*, in order to avoid the charge of contributory negligence when run down by a speeding automobile without sounding a warning, then he has no right of way, but enters upon any part of the street at his own peril. If the conceded right of way means anything at all, it puts the necessity of continuous observation and avoidance of injury upon the driver of the automobile when approaching a crossing, just as the necessity of the case puts the same higher degree of care upon the pedestrian at other places than at crossings." (Italics ours.)

We are of the opinion that in the cited case it was not necessary, and that this court did not intend, to lay down or announce any rule relative to the rights or duties of pedestrians and motor vehicles at other than street intersections, as that was the only question before the court.

The ordinance cited in the present case, being ordinance No. 73375 of the city of Seattle, does not prohibit a pedestrian from crossing a street at other than an intersection, but it does give vehicular traffic the right of way at points along the street other than intersections.

We stated in *Wickman v. Lundy*, 120 Wash. 69, 206 Pac. 842:

"It has most generally been held that a pedestrian has a right, in the absence of a statute or ordinance forbidding, to use any portion of a street. Our attention has not been called to any ordinance of the city of Seattle which prohibits or restricts such use. *The ordinance to which our attention has been called does nothing more than give the pedestrian the right of way at intersections and crossings, and vehicular traffic the right of way at other points in the street.* This, however, is far from forbidding pedestrians the use of streets between intersections. It is probably true that a pedestrian who crosses the street between intersections has imposed upon him a greater degree of care because of the right of way given to vehicles. But the fact remains that the pedestrian has a right to cross the street at places other than intersections." (Italics ours.)

■ It seems to us, after a reading of many cases, that a statement found in the case of *Crowl v. West Coast Steel Co.*, *supra*, relative to an instruction given by the trial court in that case, and because of which the court had granted a new trial, believing that the instruction was a misstatement of the law, is applicable here. The instruction there given was as follows:

" 'You are further instructed that at other places than at crossings the law places upon the pedestrian the necessity of continuous observation and avoidance of injury.' "

The respondents contended that this instruction invaded the province of the jury. The opinion states:

"Under ordinary circumstances, and in the absence of statute or local ordinance influencing or controlling the situation, we would be disposed to agree with this contention. This court has uniformly held that the care required of a plaintiff is measured by the care which would be taken, under like circumstances and conditions by a reasonably prudent and careful man. Ordinarily, it should be left to the jury to say whether or not, under the particular conditions existing, a plaintiff would be guilty of negligence if he did not constantly keep on the lookout for danger. [Citing cases.]"

Later in the opinion this court, referring to the language heretofore quoted from the *Johnson* case, *supra*, stated:

"But the court used that language as applicable to the facts of that case. Circumstances may arise where the court may say, as a matter of law, that it would be the duty of the plaintiff in crossing the street to be constantly on the lookout to avoid danger."

While this court, in the *Crowl* case, held that the trial court was in error in granting a new trial because of the giving of the instruction heretofore quoted, it is evident that the opinion is based very largely upon the particular ordinance there involved. Relative to such ordinance we quote what this court stated:

"But there is involved in this case an ordinance of the city of Tacoma, reading as follows:

" 'Pedestrians shall cross streets *only* at street intersections and places designated as cross walks, and at such points they shall have the right of way over all vehicles. Between street intersections and crossings vehicles shall have the right of way.' [Italics ours.] Ordinance No. 6626, § 23.

"This ordinance not only gives the right of way to vehicles between intersections of streets, but practically denies to pedestrians the right to cross any street except at street intersections or places designated as cross-walks. A pedestrian, who crosses the street at a place other than at street intersections or cross-walks, does so in direct violation of the specific provisions of this ordinance. Manifestly, this ordinance was passed with the view of lessening, if possible, the number of injuries occurring in city streets, as the result of pedestrians being run over by automobiles. There are in this state many ordinances and statutes regulating street and highway traffic. . . . This court has uniformly held that a violation of these ordinances and statutes is negligence *per se*. [Citing cases.]

"Under the doctrine of these cases, and others which might be cited, it must be held that if the plaintiff, at the time of his injury, was crossing the street between intersections, he did so in violation of the ordinance we have quoted and was guilty of negligence as a matter of law."

It will be seen, therefore, that undoubtedly the legal basis for the court's action in the *Crowl* case was the particular ordinance there under consideration, which made it *unlawful* for a pedestrian to cross a street at other than intersections and places designated as crosswalks.

*Ross v. Johnson,* 22 Wn. (2d) 275, 155 P. (2d) 486, cited by respondent in this case, and which respondent argues discusses the "continuous observation" rule, was also an intersection case, and it is our opinion that this case, like the case of *Johnson v. Johnson, supra,* did not purport to announce any rule applicable to an accident occurring between a pedestrian and a motor vehicle at a place other than at an intersection.

The accident involved in the case of *Hooven v. Moen,* 150 Wash. 8, 272 Pac. 50, occurred on the highway outside the city limits of Seattle. However, the court stated:

"But if we were to assume, as appellant does, that respondent's rights are the same on the highway as on a city street, the facts here would not help appellant. The rule which we think applicable to such a state of facts is well stated in *Hillebrant v. Manz,* 71 Wash. 250, 128 Pac. 892, where a pedestrian crossed a street in the city of Seattle diagonally, at a point somewhat south of the intersection. The plaintiff in that action having testified that he looked for traffic before leaving the curb and found the street clear, we said:

" 'Whether, after looking once and seeing a clear street, the appellant acted as a reasonably prudent man in proceeding from a point within twelve feet of the street intersection toward the street car which he was intent upon boarding, without again turning and looking south along the avenue, in the absence of any sound of horn or other warning, was plainly a question for the jury. As said by the supreme court of Massachusetts, so holding in a case parallel with this in every essential particular:

" ' "There is no imperative rule of law which has been called to our attention generally requiring a pedestrian when lawfully using the public ways to be continuously looking or listening to ascertain if autocars are approaching, under the penalty that upon failing to do so, if he is injured, his negligence must be conclusively presumed".' (Citing cases.)"

 It should be kept in mind that the boy in the instant case was only thirteen years of age. In *Kellum v. Rounds,* 195 Wash. 518, 81 P. (2d) 783, we made the following statement relative to the degree of care required of a boy fourteen years of age:

"And, finally, he was but fourteen years and five months of age, and was, therefore, not necessarily held to the same amount of care that an adult would be."

See *Wickman v. Lundy, supra.*

Huddy, Cyclopedia of Automobile Law (9th ed.), vol. 5-6, § 97, p. 168, states:

"In the absence of a prohibitory statute or ordinance, a pedestrian has the right to cross a street at any point within the block, and it is not negligence as a matter of law to cross a street between crossings or at some point other than a regular crossing."

See *Collins v. Nelson,* 112 Wash. 71, 191 Pac. 819; *Wickman v. Lundy, supra.*

■ We are of the opinion that, under an ordinance such as here being considered, a pedestrian crossing a street at other than an intersection would not be guilty of contributory negligence as a matter of law because of such ordinance alone, if he failed to keep a continuous lookout for traffic after having looked for approaching traffic before starting to cross the street. In other words, an ordinance such as we are now considering, and referred to in instruction No. 14, does not in and of itself put the necessity of continuous observation and avoidance of injury upon the pedestrian while in the street at a place other than a crosswalk. See *Wickman v. Lundy, supra.*

In *Cox v. Kirch,* 12 Wn. (2d) 678, 123 P. (2d) 328, this court made the following statement · relative to the duty of a pedestrian in crossing a road:

"In the instant case, it was the duty of the respondent [pedestrian] to exercise due care for his own safety. The measure of care required of him was dependent upon the attendant circumstances and conditions, one of which was the statute requiring him to yield the right of way to vehicles upon the roadway. However, considering all the elements of his situation, particularly his having passed beyond the center of the road, we think the record supports the trial court's conclusion that respondent was not guilty of contributory negligence."

■ Considering the ordinance here involved and all of the other facts in the case, including the age of the boy

and the fact that at the time of the accident he had crossed the street and reached the grassy strip to the east of the traveled part of the highway, we are of the opinion that the court erred in placing upon the boy the duty of continuous observation, as it did in instruction No. 14, and the duty of keeping a continuous lookout, as it did in instruction No. 19.

Without attempting to specifically state just what would have constituted a proper instruction in this case relative to the degree of care required of Carroll Wood, we are of the opinion that the jury should have been instructed to the effect that, in determining the question of whether or not Carroll Wood was guilty of contributory negligence, they should consider the question of whether or not he exercised such care as would reasonably and ordinarily be expected of a boy of his age, intelligence and experience, under like circumstances and conditions. If he did, he was not guilty of contributory negligence; if he did not, he was guilty of contributory negligence.

The trial court gave an instruction in effect the same as above indicated, but it then gave, in addition, instructions Nos. 14 and 19. We are compelled to hold in this case that it was not only error to give instructions Nos. 14 and 19, but prejudicial error.

We are of the opinion the trial court did not err in refusing to give appellant's requested instruction on the last clear chance theory. Respondents contend that the truck driver was confronted with an emergency, and that his acts should be judged accordingly. Two emergency instructions (Nos. 23 and 24) were submitted by respondent and given by the trial court. No exceptions to these instructions were taken by appellant. In our opinion, there was no evidence in this case which would have justified the court in giving the requested instruction. See *Hartley v. Lasater,* 96 Wash. 407, 165 Pac. 106; *Burlie v. Stephens,* 113 Wash. 182, 193 Pac. 684.

For the reasons herein assigned, the judgment of the trial court is reversed, and the cause is remanded with instructions to grant appellant's motion for a new trial.

BEALS, STEINERT, MALLERY, and HILL, JJ., concur.